𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

MORGAN AND ANOTHER v. BOOKER.

January 17, 1907.

1. APPEAL AND ERROR—*Issue Out of Chancery.*—Where the evidence re-
   lating to the principal fact in a chancery suit is conflicting, the
   credibility of witnesses is involved, and a charge of fraud is to be
   determined, and this court is not satisfied that the ends of
   justice have been attained by the decree entered by the trial
   court, it will reverse the decree and remand the cause with direc-
   tion to frame an issue and have it tried by a jury to ascertain
   the fact in controversy.
2. EVIDENCE—*Witnesses—Death of An Original Party.*—Upon the trial
   of an issue between the holder of a negotiable note and one who
   has assumed its payment, to ascertain whether or not the holder
   was in good faith the holder and owner for value, and, there-
   fore, involving the validity of a subsequent payment to the
   payee, no question is involved as to the execution of the note
   or its original validity, nor any other question in which the
   payee has, or can have, an interest, and such holder is a com-
   petent witness, notwithstanding the death of the payee.

Appeal from a decree in chancery of the Corporation Court
of the city of Roanoke.    Decree for the complainant.    Defen-
dants appeal.

*Reversed.*

The opinion states the case.

*G. W. Crumpecker,* for the appellants.

*G. S. Bowman,* for the appellees.

KEITH, P., delivered the opinion of the Court.

W. O. Booker, the appellee, filed his bill in the Corporation Court of the city of Roanoke, charging that on the 21st of September, 1890, L. L. Powell and wife and G. Y. Booker and Fannie B., his wife, conveyed to David R. Morgan, with general warranty of title, two certain parcels of land in the city of Roanoke, known as lots Nos. 1 and 2, as shown on the map of River View Land and Manufacturing Company; that the unpaid purchase money, a part of the consideration mentioned in said deed, was evidenced by two interest-bearing negotiable notes, of even date with the deed, for $1,250 each, executed by Morgan and made payable to Powell and Booker, or order, at the National Exchange Bank of Roanoke, Va., in one and two years, respectively, from date; that on the 21st of September, 1890, Morgan conveyed these parcels of land to C. A. Huffman, trustee, to secure to Powell and Booker the payment of the said two notes; that on the 15th of May, in the year 1894, before the said deed of trust had been in any way released, and before the second of said notes had been paid, Morgan conveyed both of said lots to his wife, Jannette Morgan, the said Jannette Morgan being then informed that the deed of trust had never been released and the second of the two notes had not been paid; that prior to the time when Jannette Morgan became the purchaser of these lots, L. L. Powell, one of the payees in said second note, and one of the beneficiaries in the deed of trust, endorsed and delivered it to the other payee, G. Y. Booker; that prior to or about the time Jannette Morgan became the purchaser of said lots, G. Y. Booker, the then holder of the second note, endorsed and delivered it unto Fannie B. Booker, his wife, as follows: "Pay to the order Fannie B. Booker, G. Y. Booker"; that about the same time Fannie B. Booker, who then held the second note, endorsed the same generally as follows: "Fannie B. Booker," and delivered the second note to William O. Booker, who now holds it; that Jannette Morgan, at the time of her purchase of the lots well knew of the endorsement and deliveries of the second note, and that

W. O. Booker had become the holder thereof from Fannie B.
Booker, and that with such knowledge she made several pay-
ments on the said note, which payments were credited on the
back of the note, aggregating $115; that at the July term, 1901,
of the Corporation Court, on the motion of Jannette Morgan
against G. Y. Booker, L. L. Powell, D. R. Morgan, and C. A.
Huffman, trustee, while the legal title to said lots was still out-
standing in C. A. Huffman, trustee, Jannette Morgan moved
the court for a decree authorizing the clerk to mark the deed of
trust satisfied, and releasing the same on the margin thereof,
on the ground that the entire purchase price of the lots had been
paid, and that the second note which W. O. Booker then held
had been paid; that in order to sustain her motion, Jannette
Morgan fraudulently procured from G. Y. Booker, one of the
beneficiaries in said deed of trust, a deed purporting to release
the deed of trust, which release deed bears date on the 14th of
February, 1901, and is among the papers in the cause. The
release deed named C. A. Huffman, trustee, as party of the
first part, G. Y. Booker as party of the second part, and D. R.
Morgan as party of the third part, but is signed, sealed and
acknowledged only by G. Y. Booker, C. A. Huffman not join-
ing in it. The deed recites that "whereas the said G. Y.
Booker afterwards became the sole owner of said notes and the
same have been fully paid off and satisfied, and the said David
R. Morgan desires that the said property shall be released from
the said deed of trust; now, therefore, this deed witnesseth,"
etc., and releases the lien of said deed of trust; that at the
time of the fraudulent procurement of the said deed of release
by the said Jannette Morgan, the said G. Y. Booker was de-
ranged and of unsound mind, and incapable of attending to
any business whatsoever, and had been of deranged, unsound
and weak mind for a number of years prior thereto; that rely-
ing upon this fraudulent deed of release the court granted the
decree asked for, which was, in part, as follows: "The court
being satisfied that the proof shows that the debt secured by

the deed of trust hereinafter mentioned has been paid and discharged, it is ordered that the clerk of this court shall endorse on the margin of the page of the deed book wherein the said deed of trust is recorded the following: 'The debt secured by this deed of trust has been satisfied and discharged. See Common Law Order Book 20, page 385,' which entry when so made shall operate as a satisfaction and discharge of the debt secured by said deed of trust and as a release of said deed of trust"; that in accordance with the order the clerk did mark said deed of trust as satisfied and released; that the whole proceeding under the motion of Jannette Morgan was a fraud upon the rights of W. O. Booker, and at the time of said motion and decree the said Booker was and is now the holder of the second note, and is entitled to all the benefits and rights arising from the deed of trust; that he is entitled to have said order set aside and annulled as fraudulently procured, and to have a trustee substituted in the place of C. A. Huffman, trustee in the said deed of trust, and to have the said two lots of land sold by the substituted trustee to satisfy the second note which he now holds and which remains unpaid.

Jannette Morgan answered this bill. She admits the execution of the deed by Powell and Booker to David R. Morgan, and that the balance due was to be paid in two equal installments of $1,250 each, secured by deed of trust; that she became the purchaser from David R. Morgan before the deferred installments of purchase money had been paid, but claims that the lien had been fully satisfied to G. Y. Booker, the holder and rightful owner thereof. She denies that G. Y. Booker ever endorsed and delivered the second of said notes to Fannie B. Booker, his wife, or that the same was ever delivered to W. O. Booker; and further denies that the note has at any time been endorsed and delivered to W. O. Booker, and that she ever had any knowledge of complainant's ownership of the note. She denies that she ever paid the complainant any part of the note at any time, but says that she and her husband together made

many payments on the two notes which were given by her husband for the deferred payments of purchase money; that they continued to pay in small sums, as fast as they could earn it, on the first note until it was paid off in full, and then began the payment of the last note, and continued its payment in small sums until it was all paid off and satisfied. She admits that the note was properly endorsed by L. L. Powell to Booker; that for a valuable consideration these notes fell to G. Y. Booker in a final settlement between him and Powell, in which settlement Booker released his right in other property to L. L. Powell which had theretofore been held by them as joint owners. She denies that any consideration passed from Fannie B. Booker, the wife of G. Y. Booker, nor was it contemplated to vest any right of property to the note in her, but, on the contrary, it was done for the mutual convenience of the husband and wife, he being feeble and unable to give his personal attention to business for several years prior to his death, and the general endorsation on the note by Fannie B. Booker was not a conveyance thereof to anyone, and conveyed no more interest in the note than simply to have it collected by the bank officer for her. She admits that she made a motion before the Corporation Court after due notice to all parties, in strict conformity with the law of the state, and that after full and complete testimony and proof to the satisfaction of the court that all of the debt secured by the deed of trust had been paid, the clerk was directed to endorse satisfaction of the lien upon the deed book. She denies that there was any fraud practiced upon the rights of complainant or anyone else in the procurement of the deed of release. She denies that G. Y. Booker was deranged or demented, but declares that though ill and physically disabled, he was of sound mind.

Upon the issues thus raised evidence was taken. W. O. Booker, in his deposition, states that he loaned his brother $800, and that for that consideration the note was endorsed and delivered to him; that the name of Fannie B. Booker was on

it when he received it; that no part of it had ever been paid, except certain small sums endorsed upon it; and that he became the owner of the note in the latter part of 1890 or the early part of 1891, before it fell due.

In his bill, it will be recalled, that he claimed to have become the owner of the note about the time Jannette Morgan became the purchaser of the land on which it constituted a lien, and her deed bears date the 15th of May, 1894. According to his deposition, therefore, he became the owner of the note in the latter part of 1890 or the early part of 1891, and certainly before it fell due; while in his bill it is stated that he became the owner of it not earlier than the 15th of May, 1894. The statement of W. O. Booker with respect to the consideration is by no means satisfactory, and the same is true of the proof as to the mental condition of G. Y. Booker at the date of the deed of release signed by him.

Upon the whole case we are of opinion that as the evidence is conflicting, the credibility of witnesses is involved, and a charge of fraud is to be determined, the proof is not sufficiently definite and certain to satisfy us that the ends of justice have been attained by the decree of the Corporation Court, and in order that the subject may be more fully investigated, an issue should be framed and tried before a jury to ascertain whether or not W. O. Booker was in good faith the owner and holder, for value, of the note in controversy, upon the trial of which issue W. O. Booker is to hold the affirmative.

We are further of opinion that W. O. Booker will be a competent witness upon the trial of that issue. The question here does not involve an inquiry into the execution of the note, nor its original validity. The subject of investigation is the payment of that note. Neither the estate of G. Y. Booker, nor that of his wife, is interested in the result of the issue to be tried. Appellant claims that the note has been paid, and in proof of it vouches a release from G. Y. Booker; W. O. Booker asserts that it has not been paid, and relies upon the transfer of the

note to him by G. Y. Booker; so that, in no event, can the estate of G. Y. Booker or his wife have any interest in the subject.

The decree complained of will be reversed, and this court will enter such decree as the Corporation Court should have entered.

*Reversed.*