# Wytheville.

## Stevens v. Duckett.

June 13, 1907.

Absent, Cardwell, J.

1. EQUITY—*Issue out of Chancery—Object—When to be Ordered.*—The object of an issue out of chancery is to satisfy the conscience of the chancellor in a doubtful case. It is not sufficient that the evidence is simply conflicting, but the case must be doubtful, and there must be proper evidence that it is doubtful. The propriety of ordering an issue depends upon sound discretion, which is to be cautiously and diligently exercised according to the circumstances of the particular case. A party cannot be deprived, by an order for an issue, of his right to a decision by the court on the case as made by the pleadings and proof, unless the conflict of the evidence is so great, and its weight so nearly evenly balanced, that the court is unable to determine on which side the preponderance is.

2. EQUITY—*Issue out of Chancery—Affidavits Allowed by Statute—Contents.*—Under section 3381, Code 1904, the mere affidavits of parties and counsel that the case will be rendered doubtful by conflicting evidence, is not sufficient to warrant a chancellor in ordering an issue. The court is still to exercise its discretion, on sound principles of reason and justice, as to the necessity for the issue, and this it cannot do unless the affidavits contain sufficient facts to furnish a proper basis for its judgment. The affidavits simply take the place of the testimony required prior to the enactment of the statute.

3. EQUITY—*Issue out of Chancery—Effect of Improperly Ordering—Reversal—How Record Viewed on Appeal.*—In determining whether a trial court erred in awarding an issue out of chancery, this court will not be influenced by any matters connected with the testimony taken on the trial of the issue, but will look simply at the state of the proof existing at the time when the issue was ordered. If it appears that the issue was improperly awarded because of the in-

sufficiency of the affidavits upon which the application was based, this court will reverse the order awarding the issue, although a verdict has been found in favor of the plaintiff, and will remand the cause for further proceedings.

Appeal from a decree of the Circuit Court of Fauquier county. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*George D. Beattys, George B. B. Lamb* and *George Latham Fletcher,* for the appellant.

*Barbour & Rixey, C. M. White* and *Keith & Keith,* for the appellee.

HARRISON, J., delivered the opinion of the Court.

This appeal is from several decrees of the Circuit Court of Fauquier county in a chancery cause, wherein the appellee, R. H. Duckett was complainant and the appellant, C. Amory Stevens, was defendant.

The bill alleges that in July, 1899, a partnership was agreed upon between the appellant and the appellee, which was consummated in December, 1899, for the purchase of the Kelly gold mine in Fauquier county, and such other real estate as might be thought desirable, and for the purchase of personalty useful in mining operations. The terms of the partnership are alleged to have been that appellant was to furnish all necessary funds to purchase the property mentioned, to develop and run the mine, and to provide appellee with funds to run his house, and clothe his family; that appellee, on his part, was to stay on the premises, do the mining, oversee all the work at the mine, conduct all negotiations for other property to be held by them, and to furnish the partnership his experience in

mining, building mills and installing machinery, and to run the business; that all the property purchased was to be partnership property, appellant to have a three-fourths interest therein, and appellee a one-fourth interest; that a large amount of property was bought under this partnership agreement, and conveyed from motives of policy to the appellant; that the partnership agreement remained in force until January, 1904, when appellant claimed the exclusive ownership of all the property, and notified appellee that he must give up his house and leave the premises. The prayer of the bill is that the property in question may be declared to be partnership property, that a division of the personal property and a partition of the real estate may be had between the parties according to their respective rights.

The appellant filed an answer to the bill, in which he denies the formation, consummation or existence, at any time, of the alleged partnership; sets forth that appellee had been an employee of the appellant, upon the terms that if the mining operations proved successful appellee was to receive, as compensation for his services, three-sixteenths of any profits realized; details the expenditure by appellant of more than $100,000, the heavy losses incurred in consequence of the ignorant and unfaithful conduct of appellee, and the final resolve of appellant to cease operations in order to save himself from continued imposition and eventual disaster.

There was a demurrer to the bill, which was properly overruled.

It appears from a *nunc pro tunc* order entered in the cause at the February term, 1907, and brought to this court by writ of *certiorari*, that at the May term, 1905, the circuit court, over the protest of the appellant, awarded an issue out of chancery, in advance of the introduction of any evidence, to be tried by a jury, to ascertain whether a partnership existed between appellant and appellee, and, if so, the terms thereof, and what property it embraced. This *nunc pro tunc* order shows

that the basis for awarding the issue out of chancery was an affidavit filed by the appellee, in which it is stated that the issue to be determined would be rendered doubtful by conflicting evidence of the opposing party, and that he believed an issue out of chancery should be directed in the cause; and also a joint affidavit by counsel for the appellee, saying that they had read the affidavit of their client, that they were fully acquainted with the points in issue, and knew that the evidence would be conflicting, and that in their opinion it would be proper to award an issue out of chancery. The first and most important question to be considered on this appeal involves the court's action in directing this issue to be tried by a jury.

It has long been settled by the decisions of this court that an issue out of chancery will not be directed when the claim is altogether unsupported by evidence. The rule has been that the defendant cannot be deprived, by an order for an issue, of his right to a decision by the court on the case as made by the pleadings and the proof, unless the conflict of the evidence is so great and its weight so nearly evenly balanced that the court is unable to determine on which side the preponderance is. *Pryor* v. *Adams,* 1 Call 381, 1 Am. Dec. 533; *Wise* v. *Lamb,* 9 Gratt. 294; *Smith* v. *Betty,* 11 Gratt. 752; *Beverly* v. *Walden,* 20 Gratt. 147; *Mahnke* v. *Neal,* 23 W. Va. 57.

It is also settled by numerous decisions of this and other courts that the ordering of issues depends on the application of sound legal discretion to the circumstances of the case. It is not a power to be exercised at pleasure, and depending on arbitrary discretion. Ordering an issue must always depend upon sound discretion, to be cautiously and diligently exercised, according to the circumstances of each particular case. *Beverly* v. *Walden,* 10 Gratt. *supra*; *Mahnke* v. *Neal, supra.*

The object of an issue out of chancery is to satisfy the conscience of the chancellor in a doubtful case. *Almond* v. *Wilson,* 75 Va. 613. But the authorities all show that there must be proper evidence that the case is doubtful. In this connection it

becomes necessary to consider the statute recently enacted by the General Assembly and now carried into section 3381, Va. Code, 1904, which is as follows: "Any court in which a chancery case is pending may direct an issue to be tried in such court or in any Circuit or Corporation Court, and the court shall have the discretion to direct such an issue to be tried before any proof has been taken by either plaintiff or defendant, if it shall be shown by affidavit or affidavits, after reasonable notice, that the case will be rendered doubtful by the conflicting evidence of the opposing party."

It will be observed that this act, in conformity with the rule theretofore existing, reposes in the court the exercise of its discretion in determining whether or not an issue shall be directed. The modification of the former rule governing in such cases is found in the provision that before any proof has been taken the court may act upon affidavit or affidavits. In other words, the affidavit takes the place of the testimony required prior thereto. The court cannot properly exercise sound discretion or tell whether "the case will be rendered doubtful by the conflicting evidence of the opposing party" unless the affidavits provided for shall contain facts sufficient to furnish a proper basis for the court's judgment.

In the case before us, the affidavits of the appellee and his counsel are mere opinions that in their judgment the evidence of the opposing party would be conflicting, and an issue out of chancery proper. If the statute were held to have intended that the affidavits filed should contain only the language of the statute without any facts, then in every chancery case the direction of an issue would become a matter of right and not of discretion, as a party to the suit can always state that in his opinion "the case will be rendered doubtful by the conflicting evidence of the opposing party." The Legislature, by the express language of the statute, reposed in the court the exercise of discretion in determining when there should be an issue out of chancery, and it could hardly have intended, in

the same breath, to require the court to surrender its judgment and discretion and transfer the decision of that question to a party to the litigation, or his counsel.

We are of opinion that it was not intended by the statute to change the firmly established rule of law, that the chancellor was to properly exercise his discretion "on sound principles of reason and justice;" but that the change was merely to allow, instead of testimony of witnesses as to the facts, as theretofore, simply an affidavit as to the facts, or affidavits, as it might be that all the necessary facts would not always be in the possession of a single witness. A chancellor cannot properly exercise reason and discretion unless the facts upon which he is to act are before him in some form. Any other interpretation of the statute would, as already said, make the whole matter of directing an issue one of right and not of discretion on the part of the chancellor.

The issue is not to be directed simply because the evidence is contradictory. Chancellors are constantly called upon to decide cases upon testimony which is conflicting and contradictory.

In *Hord's Admr.* v. *Colbert,* 28 Gratt. 49, 60, Judge Staples says: "It does not follow that an issue is necessary and proper in every case where the evidence happens to be conflicting. If this was the rule, the chief time of the chancery courts would be occupied with trials before juries, or in considering their verdicts. The Circuit Courts and the judges of this court are constantly called upon to decide questions of fact upon testimony of a very conflicting character."

In *Keagy* v. *Trout,* 85 Va. 390, 395, 7 S. E. 329, Judge Lewis, speaking for the court, says: "The chancellor is not bound to direct an issue merely because the evidence is contradictory. He must exercise in the matter a sound discretion, and, if his conscience is satisfied, the expense and delay which a jury trial involves ought not to be incurred, except in particular cases in which by statute or practice, it is made a matter of right."

It is suggested at bar that the Circuit Court having in this case directed the issue, and the jury having found the verdict, this court should not now disturb the result, even though of opinion that the issue was improperly awarded at the time it was ordered.

This court has repeatedly decided that the awarding of an issue out of chancery rests in sound discretion, subject to review on appeal.

In *Beverly* v. *Walden, supra,* it is said: "While it is true that directing an issue to be tried by a jury is a matter of discretion in a court of equity, it is equally true that such discretion must be exercised upon sound principles of reason and justice. A mistake in its exercise is a just ground of appeal; and the appellate court must judge whether such discretion has been soundly exercised in a given case."

In deciding the question, this court should not be influenced by any matters connected with the testimony taken on the trial, but should look simply at the state of the proof existing when the issue was ordered. The mere fact that there was an issue directed and tried, and a verdict rendered for the plaintiff, affords no reason why the court should not reverse the decree if the order directing the issue was improperly granted. *Collins* v. *Jones,* 6 Leigh 530, 20 Am. Dec. 216; *Smith's Adm'r.* v. *Betty, supra; Mahnke* v. *Neale, supra.*

In the case of *Smith's Adm'r.* v. *Betty, supra,* the court said: "In the case of *Prior* v. *Adams,* 1 Call 382, 1 Am. Dec. 533, this court held that it was its duty, in reviewing a decree founded on the verdict of a jury, rendered on an issue out of chancery, to look to the state of the proofs existing at the time when the issue was ordered; and if satisfied that the chancellor had improperly exercised his discretion in directing the issue, to render a decree, notwithstanding the verdict, according to the merits, as disclosed by the proofs on the hearing when the issue was ordered."

We are of opinion that the Circuit Court, in directing the

issue in this case, acted upon wholly insufficient affidavits, and failed to exercise the discretion contemplated by law in such matters. Upon well established rules of law, the decrees complained of must be set aside, and the cause remanded for further proceedings not in conflict with the views herein expressed.

*Reversed.*