Staunton.

CATRON V. NORTON HARDWARE COMPANY AND CATRON V.
A. L. P. CORDER AND COMPANY.

September 19, 1918.

1. MULTIFARIOUSNESS—*Attachment in Equity—County as Garnishee—Case at Bar.*—The instant suits were attachments in equity, brought by complainants, who had furnished materials and supplies used in the construction of a road, to a subcontractor, against the contractor. There was a provision in the contract between the contractor and the county, that the county should retain a sufficient amount of the contract price to pay any claims against the contractor by subcontractor and materialmen. The bill was demurred to on the ground of multifariousness because the county was made a defendant.

   *Held:* That the county was made a defendant simply as a garnishee, and under the allegations of the bill was a proper party, and that the demurrer was, therefore, properly overruled.

2. ISSUES TO JURY—*Discretion of Court—Appeal and Error—When Error to Refuse.*—While directing an issue to be tried by a jury is a matter of discretion with a court of equity, it is not an arbitrary discretion, but one to be exercised upon sound principles of reason and justice. A mistake in its exercise is just ground of appeal, and the appellate court will determine whether or not it has been properly exercised in a given case. It is error to direct an issue when it should not have been exercised, and it is equally error to fail to direct one when it should have been directed. The object of the issue is to inform the conscience of the chancellor, and for this purpose he may direct it, though not requested by either party.

3. APPEAL AND ERROR—*Respect Due to Decree of Trial Court—Issues to Jury—Depositions.*—The decree of the trial court is entitled to great respect, and is generally presumed to be right, but where the evidence was not taken before the trial court, but by depositions, and is conflicting, and involves not only the question of the credibility of the witnesses but the charge of fraud on the part of some of the parties who have testified in the cause, it is peculiarly a case for an issue to be tried by a jury, and if the chancellor has failed to order it, though not requested by the parties, his decree will be reversed.

4. ISSUES TO JURY—*Appeal and Error—Affirmance—Case at Bar.*—
   In the instant suits a majority of the court were of the opinion
   that there was sufficient evidence in the record to sustain the
   decree of the trial court in each of the cases, and that no issue
   out of chancery was necessary.

Appeals from a decree of the Circuit Court of Wise county.
Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*E. M. Fulton,* for the appellant.

*Bond & Bruce* and *Vicars & Peery,* for the appellees.

BURKS, J., delivered the opinion of the court.

These two cases were attachments in equity and were
heard together in the trial court.

J. H. Catron had contracted with the county of Wise to
construct a number of miles of public road, and the contract
contained the following provision:

"It is agreed as a part of this contract that if at any
time or times any claim or claims shall be made to the party
of the second part by a subcontractor or laborer or other
person for any money due for any work, labor or material
done upon or supplied upon the work herein contracted for,
done for, furnished or supplied to the party of the first
part, that the party of the second part may retain a suffi-
cient amount to pay the same, when said claim shall there-
after be established in court, and such amount is hereby as-
signed to said party of the second part to pay such claim
or claims, such payments to be made when so established."

It is claimed that Carrier was a subcontractor under

Catron for three miles of this road, that he is largely indebted to the complainants, that he is a non-resident, that Catron is indebted to Carrier, that the debts due the complainants are claims such as are provided for in the contract between Catron and Wise county, and that the county is indebted to Catron under his contract aforesaid. Carrier, Catron and Wise county are made defendants.

The record is in some respects incomplete. No attachment or order to attach appears anywhere in the record, and if the county of Wise entered any appearance at all, the record does not disclose the fact. There was a demurrer to the bill in each case, which was overruled. The Corder case was referred to a master to make certain inquiries. He made his report to which it is said exceptions were filed, but there are no exceptions in the record. No order of reference was made in the other case, though the inquiries were as pertinent in the one case as the other. This, however, is immaterial as the court could have gotten the facts from the record.

The cases were heard together and there was a separate decree in favor of each complainant for the amount of his debt against Catron and Wise county, but no decree against Carrier. It is presumed that Carrier was proceeded against as a non-resident, but the record is silent on the subject. He appeared in the State and was examined as a witness for the complainants and was cross-examined at length and there was ample opportunity to serve process on him. He was in effect, by his testimony, prosecuting the cases against Catron.

The errors assigned are the overruling of the demurrer, and the lack of evidence to support the decree. The ground of the demurrer was multifariousness because the county of Wise was made a defendant. The county of Wise was made a defendant simply as a garnishee, and under the allegations of the bill was a proper party. The demurrer, therefore, was properly overruled.

Whether the decrees were right on the merits cannot be ascertained from the record. On July 10, 1913, Catron prepared a writing which is signed by Carrier but not by Catron, from which it appears that Catron sublet to Carrier miles five, six and seven for construction, on certain terms therein set forth. This writing contains the following provision: "Carrier is to begin work on ...... day of August, and contract is to be drawn later to conform with the contract that said Catron is under with county supervisors." Catron explains that this was a mere memorandum to show that Carrier was to be allowed to get those miles for construction. Although the writing stated that Carrier was to "begin work on the ...... day of August," he actually began work shortly after the date of the writing, probably about July 15th or 16th. On July 18, 1913, the formal contract in writing was prepared and executed by Catron and Carrier. At that time it was expected that a third person would unite with Carrier in the contract for the work and a blank is left for his name throughout the contract. This contract contains the following provision as to a bond to be executed by Carrier and his associate:

"Now in order to insure the faithful performance of each and every condition and stipulation and requirement made by this contract and to indemnify and save harmless said J. H. Catron, from any and all damages either directly or indirectly arising out of any failure to perform the same the party of the first part is to execute and deliver herewith a bond in the penalty of six thousand dollars ($6,000) conditioned for such faithful performance of such conditions, stipulations and requirements with surety or sureties satisfactory to the said J. H. Catron. The further stipulations in contract between the board of supervisors of Wise county, Virginia, and John H. Catron, as heretofore mentioned and made a part as aforesaid of this contract and are agreed and assented to by both the parties hereto a copy

of said contract proposals specifications and etc. will be procured and attached hereto and made a part hereof."

The record shows that Catron insisted on the bond, and that an unsuccessful effort was made by Carrier and his intended associate to give it. This situation continued about thirty days. During this time Carrier was at work on the road with a force of twenty-five hands and equipment and tools, and did work which, if charged at the contract price for the whole, amounted to about $2,400. It was during this period that the accounts of complainants against Carrier were made for materials and supplies used in the construction of the road. It is claimed by Catron that ninety per cent. of the work done by Carrier was very easy dirt work, not worth over twenty cents a yard, and that when he undertook the completion of the work, it was done at a loss of $200.

The contract between Catron and Carrier was terminated by a contract between them made on August 16, 1913, in the following words and figures:

"This contract made and entered into this the 16th day of August, 1913, by and between E. C. Carrier of first part and J. H. Catron, of the second part.

"Witnesseth:

"That the said F. C. Carrier this day delivered and turned over to the said Catron the four mules that he now has on the grade work mules that he bought from Brownlow Vines and all the tools such as scrapers, dump carts, maddicks, picks, and shovels, hammers, steel blacksmith shop. Also all household and kitchen furniture that he has at Relem mines camps and all of the above property is and now belongs to the said J. R. Catron for failure of the said F. C. Carrier to comply with contract made on the 18th day of July, 1913, to grade three miles of road in Wise county. Also Catron is to take charge of said work and to make payment direct to all hands and not to pay F. C. Carrier

for anything he has done or may do, only pay him at the rates of one hundred dollars per month as long as he works and he is to work as Catron directs and whenever at any time the work is not paying for any one month Catron has right to turn Carrier off as foreman and him have no more to do with the work or outfit before mentioned. But if Carrier carries on the work satisfactorily to Catron and after Catron gets the ten per cent. retained in the contract made on the 18th day of July, 1913, and fifteen hundred dollars more clear out of said work after paying everything and all damages that he may have to pay, then Catron is to pay over to the said F. C. Carrier all the remainder and also to let him have all the mules, tools and household and kitchen furniture herein mentioned. This contract is to be completed by the 31st day of January, 1915. The contract made on the 18th day of July, 1913, is to be delivered to Catron. Given under our hands on the first named date."

"F. C. CARRIER.

"J. H. CATRON."

It is contended on behalf of the complainants and Carrier, who was their chief witness, that the written contract does not represent the real agreement entered into between the parties; that under the real agreement Catron was not only "to make payment direct to all hands" employed on the work by Carrier, but also to pay the debts contracted by Carrier for supplies, including the debts of complainants; that the contract was prepared by Catron and was read by Catron to Carrier, who could neither read nor write, and that he did not read it as it was written, but according to the real agreement of the parties. It is further contended that there was no consideration for the contract, and that it was entered into for the purpose of defrauding complainants and others, creditors of Carrier.

Catron claims that on August 19, 1913, he entered into an oral contract with Carrier by which he sold him "every-

49

thing I have here," including his estimates, for the consideration of $300. Catron stoutly denies that he was indebted to Carrier in any sum whatever at the time of the institution of these suits. Whether or not he was so indebted is the pivotal point in these cases, as it was this debt which was attached. On this point, and questions incident to it, the evidence is of the most conflicting and unsatisfactory nature, and the case is rendered so doubtful in consequence of such conflict, and the evidence is so evenly balanced, that I am unable to say on which side it preponderates. It was pre-eminently a case for an issue out of chancery to determine whether or not at the time of the institution of these suits Catron was indebted to Carrier, and, if so, in what amount. As said in *Shoemaker* v. *Shoemaker,* 112 Va. 798, 800, 72 S. E. 684, the case was "one peculiarly for a jury and the error of the court was in not ordering of its own motion an issue out of chancery." While directing an issue to be tried by a jury is a matter of discretion with a court of equity, it is not an arbitrary discretion, but one to be exercised upon sound principles of reason and justice. A mistake in its exercise is just ground of appeal, and the appellate court will determine whether or not it has been properly exercised in a given case. It is error to direct an issue when it should not have been exercised, and it is equally error to fail to direct one when it should have been directed. The object of the issue is to inform the conscience of the chancellor, and for this purpose he may direct it, though not requested by either party. *Morgan* v. *Booker,* 106 Va. 369, 56 S. E. 137; *Holm* v. *Lynchburg Trust & S. Bank,* 106 Va. 603, 56 S. E. 598; *Ewan* v. *Louthan,* 110 Va. 575, 66 S. E. 869; *Miller* v. *Wells,* 95 Va. 337, 28 S. E. 337; *Stevens* v. *Duckett.* 107 Va. 17, 57 S. E. 601; *Shoemaker* v. *Shoemaker,* 112 Va. 798, 72 S. E. 684.

It is suggested in the brief of appellees that the trial court was in a better position than this court to judge of the

credibility of the witnesses, and hence great weight should be given to its decree. Had the witnesses appeared before the trial judge and testified in his presence, I should unhesitatingly have been of opinion to affirm his decree; but all the evidence in these causes was given in the form of depositions, and the trial court was in no better position to judge of the weight of the evidence than this court is. His personal opinion of the character of witnesses who testify in a cause cannot take the place of evidence properly introduced, subject to cross-examination. Of course, no intimation is intended that such a course was adopted in the instant case. Undoubtedly the decree of the trial court is entitled to great respect, and is generally presumed to be right, but where the evidence was not given before the trial court, but by depositions, and is conflicting, and involves not only the question of the credibility of the witnesses but the charge of fraud on the part of some of the parties who have testified in the cause, it is peculiarly a case for an issue to be tried by a jury, and if the chancellor has failed to order it, though not requested by the parties, his decree will be reversed. *Shoemaker* v. *Shoemaker, supra.*

A majority of the court, however, are of opinion that there is sufficient evidence in the record to sustain the decree of the trial court in each of these cases, and that no issue out of chancery was necessary. The decree is therefore affirmed.

*Affirmed.*