# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## BLANCHE R. BUNKLEY AND WILLIAM G. BUNKLEY V. COMMONWEALTH.

### June 16, 1921.

1. ISSUES TO THE JURY—*Failure to Order as Error—Abiding by Verdict.*—In cases of exceptional difficulty and conflict in testimony, it is error for the court to fail to order an issue out of chancery, on its own motion, and as a general proposition when an issue is properly ordered it is the practice, unless good cause appears for the contrary course, for the chancellor to abide by the verdict.

2. ISSUES TO THE JURY—*Sound Legal Discretion.*—The object of an issue is to satisfy the conscience of the chancellor in a doubtful case. An issue is not directed merely because the evidence is contradictory. The propriety of ordering an issue is determined by the application of sound legal discretion to the circumstances of the situation.

3. ISSUES TO THE JURY—*Discretion of Court—Section* 3381 *of the Code of* 1904, *Section* 6246 *of the Code of* 1919.—It was not intended by section 3381, Code of 1904 (section 6246, Code of 1919), to change the firmly established rule of law that the chancellor is to properly exercise his discretion on sound legal principles of reason and justice. Any other interpretation of the statute would make the whole matter of directing an issue one of right and not of discretion on the part of the court.

4. ISSUES OUT OF CHANCERY—*Sufficiency of Affidavit.*—Petitioners in their affidavit stated that they would introduce "a large number of witnesses who would contradict the witnesses of the complainant, and that there would result a great conflict in the testimony to be offered by the parties to the suit, presenting issues of fact which are necessary to be determined, out of a mass of conflicting testimony, in order to arrive at a correct decision of the case," and therefore the court was asked to direct an issue out of chancery.

   *Held:* That the court erred in directing an issue upon this affidavit, and that the case should therefore be considered on the merits, as if no issue had been awarded.

5. DISORDERLY HOUSES—*Proceeding Against Under Acts of Assembly* 1916, *p.* 780—*Sufficiency of Evidence—Decision of Trial Court.*—In a proceeding by bill in equity under Acts of 1916, p. 780 (Code 1919, §1521 *et seq.*), for the purpose of having a certain house and lot and the contents of the house declared a nuisance, enjoined and abated as provided by law, the trial court heard the testimony of the witnesses and balanced the positive testimony of the witnesses for the Commonwealth against the positive and negative testimony of the witnesses for the defendants. Heard the testimony of the defendant and her husband in contradiction of the testimony of witnesses for the Commonwealth. And from its opportunities of hearing and seeing the witnesses, was in a position to appraise the relative value of the evidence submitted. The trial court concluded that the charges of complainant's bill were established, and with that conclusion the Supreme Court of Appeals was not disposed to disagree.

6. APPEAL AND ERROR—*Respect to Which Findings of Lower Court Entitled.*—The decree of a trial court is entitled to great respect, and is generally presumed to be correct. Indeed, when a trial court hears a case, and reahces a conclusion upon oral testimony, that conclusion is substantially entitled to the same credit as the verdict of a jury.

7. DISORDERLY HOUSES—*Acts of* 1916, *p.* 780—*Constitutionality of Act—Title.*—Act of 1916, p. 780 (Code 1919, § 1521 *et seq.*), against houses of ill fame, is not unconstitutional in that the provision of forfeiture contained in the act was not embraced in the title. The title of the act is, in part, "to abate houses of lewdness," etc. The provision of forfeiture is punishment inflicted upon persons conducting houses of lewdness, and is cognate to and an appropriate part of abatement.

8. STATUTES—*Constituitionality—Title and Object.*—Section 52 of the Constitution of 1902 is to be liberally construed in determining whether an act is broader than its title, and the act is to be upheld if practicable. Although a statute refers to many things of diverse natures the title will be sufficient if the subordinate provisions of the statute may be fairly regarded as in furtherance of, and as facilitating the accomplishment of, the general object expressed in the title.

9. DISORDERLY HOUSES—*Acts of* 1916, *p.* 780—*Constitutionality—Due Process of Law.*—Acts of 1916, p. 780 (Code 1919, § 1521 *et seq.*), providing for the abatement of houses of ill fame is not in conflict with the due process of law provisions of the Constitution of the United States and of Virginia.

10. DISORDERLY HOUSES—*Acts of 1916, p. 780—Constitutionality— Due Process of Law—Case at Bar.*—The provisions as to taking, or damaging, private property in the Constitution of Virginia and of the United States have no relation to a forfeiture of property imposed upon an owner who has been convicted of using the same for unlawful and immoral purposes. And in the instant case, the abatement of a house as a nuisance under Acts of 1916, p. 780 (Code 1919, § 1521 *et seq.*), the owner had due process of law when he was impleaded on a specific charge, the punishment of which, in part, was forfeiture, and was afforded the opportunity to make his defense.

11. DISORDERLY HOUSES—*Abatement—Constitutionality of Acts of 1916, p. 780—Police Power.*—Acts of 1916, p. 180 (Code 1919, § 1521 *et seq.*), provides that whoever knowingly erects, uses, or maintains a building for the purpose of lewdness, assignation, or prostitution, is guilty of a nuisance, and the building and ground so used, and the furniture and fixtures, are also declared to be a nuisance, and shall be abated as provided. The court is authorized, once the acts forbidden are established, to order the sale of the fixtures, and to decree the effectual closing of the building, or place, against its use for any purpose for one year, unless sooner released.

*Held:* That the act is a valid exercise of the police power.

Appeal from a decree of the Corporation Court of the city of Newport News. Decree for the Commonwealth. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Jno. N. Sebrell, Jr.* and *J. Winston Reade, Jr.,* for the appellants.

*Attorney General Jno. R. Saunders, Assistant Attorney General J. D. Hank, Jr.,* and *Second Assistant Attorney General Leon M. Bazile,* for the Commonwealth.

SAUNDERS, J., delivered the opinion of the court.

In February, 1920, the Commonwealth of Virginia, at the relation of C. C. Berkeley, commonwealth's attorney for the

8

city of Newport News, brought its bill in equity, pursuant
to the provisions of the Acts of Assembly, 1916, p. 780, C.
463, alleging that Blanche R. Bunkley, alias Blanche R. Wil-
son, and William G. Bunkley, her husband, since November,
1918, had knowingly and unlawfully maintained and kept,
and were knowingly and unlawfully maintaining and keep-
ing a certain designated building as a house of ill fame and
for the purposes of lewdness, assignation and prostitution,
resorted to during said period of time by idle and dissolute
persons, both men and women, for the purposes of lewd-
ness and prostitution. The bill contained other allegations
appropriate under the statute, and concluded with the
prayer that the house and lot, and contents of said house,
be declared a nuisance, and the same be enjoined and
abated, as provided by law.

Petitioners in error filed an answer to this bill, denying
all of its allegations.

Further, they filed an application for an issue out of
chancery with accompanying affidavits. Upon this applica-
tion the court ordered an issue, and a jury was impaneled
to try the same. Thereafter the jury returned a verdict for
the petitioners upon all of the issues submitted by the court.

The attorney for the Commonwealth moved the court to
set aside this verdict, upon the ground that the issues had
been improvidentially awarded, and that the said verdict was
contrary to the evidence, and to enter "judgment upon the
case, notwithstanding said verdict." The court, having
taken time to consider, concluded that the evidence sus-
tained the allegations of the bill, declined to accept the find-
ings of the jury, and entered a decree whereby the lot and
house thereon, and the furniture and equipment of same,
were declared to be a nuisance, and enjoined and abated.
The equipment and paraphernalia were directed to be sold,
and the house and every part thereof ordered to be closed
by the officer of the court for the period of one year from

date. The further provisions of the decree need not be re-cited.

From this decree an appeal was allowed, and the case is now before this court for review. The petition for appeal assigns the following errors:

I. The court erred in disregarding the verdict of the jury, and entering a decree sustaining the allegations of the bill and ordering the destruction of the property.

II. The said act is in violation of the Constitution of Virginia.

III. The said act is in conflict with the Constitution of the United States, and especially the fourteenth amendment thereof.

Under assignment No. I, the complainants set forth that the evidence was in the highest degree conflicting, and that not only was an issue properly awarded in the first instance, but that it would have been error not to award such issue.

Further, that having submitted certain issues to the determination of a jury, the court should have abided by the verdict found upon those issues.

In support of these contentions various Virginia precedents are cited.

[1] It is true that in cases of exceptional difficulty and conflict in testimony, it is error for the court to fail to order an issue out of chancery, on its own motion, and as a general proposition when an issue is properly ordered it is the practice, unless good cause appears for the contrary course, for the chancellor to abide by the verdict.

[2] "The object of an issue is to satisfy the conscience of the chancellor in a doubtful case." *Stevens* v. *Duckett,* 107 Va. 17, 57 S. E. 601. "But an issue is not directed merely because the evidence is contradictory." 107 Va. p. 22, 57 S. E. 603.

The propriety of ordering an issue is determined by the application of sound legal discretion to the circumstances of the situation.

"Awarding an issue out of chancery rests in sound discretion, subject to review on appeal. A mistake in its exercise is a just ground of appeal. The fact that an issue was directed and tried, and a verdict rendered for the plaintiff, affords no reason why this court should not reverse the decree, if the order directing the issue was improperly granted." 107 Va., p. 23, 57 S. E. 604.

"To justify the order for an issue out of chancery, the conflict of the evidence must be so great, and its weight so nearly evenly balanced, that the court is unable to determine on which side the preponderance is." 107 Va., p. 20, 57 S. E. 603.

"It does not follow that an issue is necessary and proper in every case where the evidence happens to be conflicting. If this was the rule, the chief time of the chancery courts would be occupied with trials before juries, or in considering verdicts. The circuit courts and the judges of this court are constantly called upon to decide questions of fact upon evidence of a very conflicting character." 107 Va., p. 22, 57 S. E. 603.

"Directing an issue is not a mere arbitrary discretion. Such discretion must be exercised upon sound principles of reason, and justice. A mistake in its exercise is a just ground of appeal, and the appellate court will judge whether such discretion has been soundly exercised in a given case." *Miller* v. *Wills,* 95 Va. 350, 28 S. E. 342.

See also to same effect, *Catron* v. *Norton Hardware Co.,* 123 Va. 386, 96 S. E. 853.

In the case of *Stevens* v. *Duckett, supra,* the trial court awarded an issue out of chancery upon the basis of an affidavit filed by the appellee, in which it was stated that the issue to be determined would be rendered doubtful by

conflicting evidence of the opposing party, and that he believed that an issue out of chancery should be directed; and also a joint affidavit by counsel for the appellee saying that they had read the affidavit of their client, that they were fully acquainted with the points in issue, and knew that the evidence would be conflicting, and that in their opinion it would be proper to award an issue out of chancery. This court set aside the order of the trial court, and in that connection used the following language: "We are of opinion that the circuit court, in ordering the issue in this case, acted upon wholly insufficient affidavits, and failed to exercise the discretion contemplated by law in such matters. The decree complained of must be set aside." 107 Va. pp. 23-24, 57 S. E. 604. Also on pages 21-22 of 107 Va., on page 603 of 57 S. E., we find the following: "In the case before us the affidavits of the appellee and his counsel are mere opinions that in their judgment the evidence of the opposing party would be conflicting and an issue out of chancery proper. The legislature, by the express language of the statute, reposed in the court the exercise of discretion in determining when there should be an issue out of chancery, and it could hardly have intended, in the same breath, to require the court to surrender its judgment and discretion, and transfer the decision of that question to a party to the litigation, or his counsel."

[3] "We are of opinion that it was not intended by the statute (sec. 3381, Va. Code, 1904) to change the firmly established rule of law that the chancellor was to properly exercise his discretion on sound principles of reason and justice;" * * * Any other interpretation of the statute would make the whole matter of directing an issue one of right and not of discretion on the part of the court."

[4] In the instant case the petitioners, Blanche Bunkley and her husband made application for an issue by a petition sworn to by Blanche Bunkley. This petition recited that a

bill in equity had been filed against them, and that the complainant had filed an application for a temporary injunction accompanied by the affidavits of one Eason and of other witnesses, which complainant alleged supported the allegations of the bill. Petitioners stated in said petition that they would "introduce a large number of witnesses who would contradict the witnesses of the complainant, and that there would result a great conflict in the testimony to be offered by the parties to the suit, presenting issues of fact which are necessary to be determined, out of a mass of conflicting testimony, in order to arrive at a correct decision of the case. That, therefore, it was eminently proper that the court should enter an order directing an issue out of chancery to be tried by a jury, and the court was asked to award such an order."

The case in judgment is plainly ruled by the case of *Stevens* v. *Duckett, supra.* If it was error in the trial court to order an issue upon the affidavit filed in that case, and it was so held, then it is manifest that upon a like affidavit in the pending case, the court erred in directing an issue. This case should, therefore, be considered on the merits, as if no issue had been awarded, and the conclusions reached by the chancellor tested by the evidence. This evidence was chiefly oral. It is true that the same is conflicting, not an uncommon thing when one party affirms and the other denies, but the conflict is not of the usual character as when witnesses, present at the same time, give varying and contradictory accounts of the things that they have seen, or heard, or have had the opportunity to see, or hear. In the main the witnesses in the instant case were never present together. The witnesses for the Commonwealth testified as to what they saw, or heard, in the establishment of the defendants. If credence is given to them, their testimony is undoubtedly ample to establish the allegations of the bill. The witnesses for the defense, save in a few in-

stances, were present on other occasions. Some took their meals there, others both lodged and took their meals in the building; still others were casual visitors. One and all they saw nothing amiss in the conduct of the proprietress or of the waitresses, white or black, tending to establish the charge that the place was operated for immoral purposes. But it will be noted that this testimony of conduct at other times and on other occasions does not directly contravene the testimony of the witnesses for the complainant, who speak of particular acts and specific conduct occurring in their presence of a lewd and immoral character, indicative of the real nature of the establishment. It is true that it may be argued that if this alleged eating and lodging house was really a house of ill fame, used for the purposes of lewdness, assignation and prostitution, some of the witnesses for the defense would have observed evidences of the same, particularly when one or more of the witnesses state that they would not have boarded or lodged at the house if they had had any reason to believe that it was in part a bawdy house. To this extent the evidence is conflicting, though not, as stated *supra*, in the usual fashion.

In passing upon the evidence as a whole, there are certain features of the case to be noted which are established by undoubted and uncontradicted evidence, indeed they are derived in part from the mouth of Blanche Bunkley, alias Wilson. She was an old hand in the detestable business of turning the frailties of her own sex and the lust of men into pecuniary profit. The following is taken from her testimony:

"Q. What was your occupation on 24th street?
"A. I ran a house of ill fame.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Q. What was your business there? (Referring to a house on 23rd street.)

"A. The same as I was doing on 24th street.

"Q. That is, you ran a house of ill fame there?

"A. Yes, sir."

The establishment under attack in the instant case was located in the restricted district of the city, and soldiers were forbidden to visit the same, under pain of court martial. This section was the "red light district" of the city, up to June 18, 1916, at which time, to quote the witness, Blanche Bunkley, the proprietors of bawdy houses were notified by the police that they would have to "stop that line of business." She alleges that she stopped. Generally speaking, this was a colored neighborhood, and there was a colored dance hall near the house in question. There were four or five white girls, alleged waitresses, in the eating house conducted by Mrs. Bunkley. These were the girls referred to by the witnesses for the complainant. Four of these young women were examined and found to be suffering from venereal diseases. Another woman who worked for appellants, a Mrs. Pollis, was taken to the detention camp. The foregoing facts are not challenged.

[5] There were various witnesses for the complainant, male and female. One of them, a Mrs. McGowan, an investigator for the War Department, investigated Mrs. Bunkley's cafe. She testifies positively to conversations with the latter, establishing the real character of the cafe, and to conduct by the white girls equally conclusive on this point. The conversations grew out of the role assumed by the witness of a member of the underworld seeking employment. According to the witness she learned from the proprietress the rates charged for an individual act of fornication, and the proportion in which the proceeds thus derived were divided. Further, she saw some of the girls giving money received

from men for sexual acts to Mrs. Bunkley. All of this was denied by the latter. Eason and Shuey, also agents of the Federal government, testify in most emphatic fashion as to the conduct of the alleged waitresses on their visits to the Bunkley cafe. If these witnesses are to be believed (and there is nothing to discredit them save the fact that they were in a distasteful but necessary role, if the laws against houses of this character are to be enforced), the infamous character of the Bunkley establishment is fully established. Hough, a former soldier and sailor, with honorable discharges, and at the time a member of the police force of the city of Newport News on special duty, also investigated Mrs. Bunkley's cafe, and testifying from personal observation fully confirms the testimony of the other witnesses as to the immoral behavior and lewd practices of the white inmates of this establishment. The trial court heard the testimony of the witnesses save one, the witness Eason, whose deposition was taken a short time before his departure for his home in Oklahoma. He balanced the positive testimony of the witnesses for the Commonwealth against the positive and negative testimony of the witnesses for the defendants. He heard the testimony of the defendant, Mrs. Bunkley, and of her husband (who married her while she was conducting a house of ill fame), in contradiction of the testimony of Mrs. McGowan and others, and from his opportunities of hearing and seeing the witnesses, was in a position of peculiar advantage to make a fair appraisement of the relative value of the evidence submitted. In view of this evidence as a whole, he concluded that the charges of complainant's bill were established. With that conclusion was are not disposed to disagree.

[6] "The decree of a trial court is entitled to great respect, and is generally presumed to be correct." *Gatron* v. *Norton Hardware Co.*, 123 Va. 387, 96 S. E. 853.

9

Indeed, when a trial court hears a case, and reaches a conclusion upon oral testimony, that conclusion is substantially entitled to the same credit as the verdict of a jury.

This was not a case of such conflict of testimony that it was error in the court not to order an issue out of chancery on its own motion. Having reached the conclusion that the issue was improvidently awarded, it becomes, of course, unnecessary for us to consider whether the trial court was justified in setting aside the verdict of the jury, and entering judgment on the evidence, though we do not mean to intimate that if this case had to be considered in that aspect, the conclusion reached by the court would not be supported by the evidence.

[7, 8] The second assignment of error is that the statute in question is unconstitutional, on the ground that it embraces more than one object, in contravention of section 52 of the Constitution of this State, providing that "no law shall embrace more than one object, which shall be expressed in its title."

This section has been the occasion of numerous decisions by this court. The title to the act in question is: "An act to abate and enjoin ·houses of lewdness, assignation and prostitution; to declare the same to be nuisances; to enjoin the person or persons who conduct or maintain the same, and the owner or agent of any building used for such purpose."

The particular defect assigned is that the "provision of forfeiture contained in the act is not embraced in the title."

In *Lucchesi* v. *Commonwealth*, 122 Va. 872-881, 94 S. E. 925, 927, this court held that "although a statute refers to many things of a diverse nature, the title will be sufficient if the subordinate provisions of the statute may be fairly regarded as in furtherance of, and as facilitating the accomplishment of the general object expressed in the title, and that the constitutional inhibition was not intended to

hinder remedial legislation, nor to prevent the incorporation in a single act of the entire statutory law upon one general subject."

The following cases are also in point: "The Constitution is to be liberally construed in determining whether an act is broader than its title. The act is to be upheld if practicable." *Ellinger* v. *Commonwealth*, 102 Va. 100, 45 S. E. 807; *District Road Board* v. *Spilman*, 117 Va. 201, 84 S. E. 103. "If there is a fair doubt that the single object, subject and purpose of a statute is sufficiently expressed in its title, such doubt should be determined in favor of the validity of the statute." *Commonwealth* v. *C. & O. Ry. Co.*, 118 Va. 261, 87 S. E. 622. See also *City of Richmond* v. *Pace*, 127 Va. 274, 103 S. E. 647.

The title of the act is, in part, "to abate houses of lewdness," etc. The provision of forfeiture is punishment inflicted upon persons conducting houses of lewdness, and is cognate to and an appropriate part of abatement.

Assignment of error No. II. is not considered to be well taken.

[9]   The final assignment is that the act in question is in conflict with the Constitution of the United States, and especially the fourteenth amendment thereof, and, as argued in the petition, with sections 11 and 58 of the Constitution of Virginia, these provisions in the two Constitutions relating to due process of law, and the taking, or damaging, of private property for public use without just compensation.

[10]   The provisions as to taking, or damaging, private property have no relation to a forfeiture of property imposed upon an owner who has been convicted of using the same for unlawful and immoral purposes. Nor is due process of law lacking in the case in judgment. The owner has had due process of law when he has been impleaded on a spe-

cific charge, the punishment of which, in part, is forfeiture, and has been afforded the opportunity to make his defense.

In a case arising under the statutes of the State of New York, which provided that nets set or maintained in the waters of the State in violation of the statutes of the State for the protection of fish, might be summarily destroyed by any person, and no action for damages should lie against any person for, or on account of, such seizure or destruction, the Supreme Court of the United States declared that this provision was a lawful exercise of the police power of the State, and did not deprive the citizen of his property without due process of law.

Further, the court said: "Nor is a person whose property is seized under the act in question without his legal remedy. If in fact his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer, or if they have been destroyed, may have his action for their value." *Lawton* v. *Steele,* 152 U. S. 133, 135, 142, 14 Sup. Ct. 499, 503 (38 L. Ed. 385).

[11]    The act of the legislature under consideration provides that whoever knowingly erects, uses, or maintains a building for the purposes of lewdness, assignation, or prostitution, is guilty of a nuisance, and the building and ground so used, and the furniture and fixtures, are also declared to be a nuisance, and shall be abated as provided. The court is authorized, once the acts forbidden are established, to order the sale of the fixtures, and to decree the effectual closing of the building, or place, against its use for any purpose for one year, unless sooner released.

The authority of the State to enact this statute under the police power is too plain to require the citation of authorities.

The punishments inflicted by the act, *supra,* are appropriate and are far short of the total destruction of the real estate. They are reasonably calculated to deter evil-minded

persons from pursuing the practices which the act denounces, and should be sustained.

Various authorities are cited by appellants in support of the last assignment of error, in particular the case of *Bristol, etc., Co.* v. *Bristol,* 97 Va. 304, 33 S. E. 588, 75 Am. St. Rep. 783. This latter case deals with an ordinance of the city of Bristol, and with the extent of the judicial power in connection with the abatement of a building as a nuisance. Neither this nor the other cases cited are in point on the situation presented in the case in judgment. This is a proceeding under a statute passed by the State in the valid exercise of the police power. The action taken by the trial court upon ascertainment that the defendants had committed the acts denounced by the statute, was pursuant to the express authority afforded by that statute.

We find no error in this record, and the decree of the Corporation Court of the city of Newport News is affirmed.

*Affirmed.*