# Richmond.

## T. S. Southgate v. Sanford and Brooks Company.

### March 17, 1927.

1. Issues out of Chancery—*When Issue is Granted—Affidavit—Allegation that Case would be Doubtful Owing to Conflicting Evidence.*—Under section 6246 of the Code of 1919, the mere allegation in an affidavit by either the plaintiff or defendant that the case would be rendered doubtful by the conflicting evidence of the opposite party, is not sufficient to cause the court to direct an issue out of chancery. In a motion to direct an issue in a chancery cause, the affidavit, or affidavits, must show the reason for such direction and call in question the exercise of the sound discretion of the court.

2. Issues out of Chancery—*Directing Issue within Discretion of Court—Discretion not Arbitrary—Effect of Section 6246 of the Code of 1919.*—Directing an issue is not a mere arbitrary discretion. Such discretion must be exercised upon sound principles of reason and justice. A mistake in its exercise is a just ground of appeal, and the appellate court will judge whether such discretion has been soundly exercised in a given case. And it was not intended by section 6246 of the Code of 1919 to change the firmly established rule of law that the chancellor was to properly exercise his discretion on sound principles of reason and justice.

3. Working Contracts—*Construction of Bulkhead—Liability between Owner and Contractor where Bulkhead Fell—Case at Bar.*—The instant case was a suit by a contractor to recover balance due on a construction job from the owner. The contract was for the erection of a bulkhead on the property of the owner. The contract provided that the work was to be done under the supervision of an architect and that final payment was to be made upon the acceptance of the work by the architect. A day or two after the architect had issued his certificate for the final payment, it was observed that the bulkhead was bulging and the owner declined to pay. It was the contention of the owner that the contractor was to deliver to the owner a completed structure and the bulkhead having given away, the contractor was liable for the resulting loss.

   *Held:* That as the architect had accepted the work by certifying that the contractor was entitled to the final payment for the work done, contractor was entitled to recover in the instant case, and was not

Syllabus.

under the obligation to furnish a completed job, reasonably adapted for use.

4. WORKING CONTRACTS—*Acceptance—Architect's Certificate—Case at Bar.*— In the instant case, a suit by a contractor against a landowner, the contract provided that payments to the contractor should be made upon presentation of certificates signed by the architect. Upon the completion of the work the architect certified that contractor was entitled to a final payment for the work done, but his certificate contained a provision that it should not be considered as an acceptance "of any work done or materials furnished."

*Held:* That there was no merit in the contention that because the certificate provides that it shall not be considered as an acceptance of the work done, that it is paramount to the contract, which specifically provides that the work shall be accepted when approved by architect, who should evidence his acceptance thereof by the issuance of his certificate.

5. WORKING CONTRACTS—*Erection of Bulkhead—Bulkhead Insufficient—Case at Bar.*—The instant case arose out of a contract to erect a bulkhead which gave away. From the evidence of the contractor, it was clear that the bulkhead gave away because the work was not sufficiently heavy; and that the fault lay in the plans and specifications. The owner contended that it gave away because of the negligence of the contractor, in failing to observe the peculiar conditions of the soil and in the negligent performance of the work. The contract and specifications provided that the contractor should visit the premises, take soundings and satisfy himself as to local conditions and assume all responsibility for the same.

*Held:* That the contractor could not be held responsible for the bulkhead giving away.

6. BUILDING CONTRACTS—*Erection of Bulkhead—Contractor's Liability— Contractor to Satisfy Himself as to Local. Conditions—Case at Bar.*— The instant case arose out of a contract for the construction of a bulkhead. One of the specifications provided that contractor must visit the premises and satisfy himself as to local conditions and assume all responsibility for the same in connection with the prosecution of the work. It was not provided that the contractor assumed all responsibility for the "completion of the work," but only in regard to the "prosecution" thereof.

*Held:* That this was not a warranty that the structure erected would not collapse even though erected according to the plans and specifications.

7. WORKING CONTRACTS—*Contract for Erection of Bulkhead—Bulkhead Giving Away—Case at Bar.*—The instant case arose out of a contract for the erection of a bulkhead which gave away. The contract specifically provided for the breaking up of a concrete road. The

owner contended that the method pursued in breaking up the road contributed to the bulging of the bulkhead. The evidence upon this point was conflicting, but the weight of the evidence was with the contractor.

*Held:* That a verdict for contractor could not be disturbed.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Tazewell Taylor*, for the plaintiff in error.

*Williams, Loyall & Tunstall*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

Appellee, Sanford and Brooks Company, a corporation (hereinafter called contractor), instituted this suit against appellant (hereinafter called owner) to recover the sum of $32,744.67, alleged to be due by virtue of a written contract entered into by and between the parties on the first day of November, 1924.

For the consideration of $83,497, the contractor was to do certain dredging and was to construct, according to plans and specifications attached to the contract, a bulkhead on the property of the owner, to prevent the earth from falling into the dock. The agreement contained a stipulation that the work was to be done under the supervision and direction of B. F. Mitchell, the architect and superintendent of the owner.

The contract also provided for payments to contractor upon presentation of certificates signed by Mitchell, to this effect: "Between the first and tenth

of each month after the date of this contract, eighty-five per cent of the value of all work done during the preceding month and of material on hand, and the final fifteen per cent when all the work had been completed and accepted by the architect."

The bill sets forth that on February 20, 1925, contractor completed its undertakings according to plans and specifications; that on February 23, 1925, Benj. F. Mitchell, architect and superintendent in charge of the work, acknowledged completion of the work, acceptance of the same, and correctness of the account sued on, and issued his certificate for the payment thereof.

This certificate was presented for payment on the morning of February 24th. A check was drawn in payment thereon, but was not signed by the owner, and a day or so thereafter it was observed that the bulkhead was bulging, and the owner declined to pay the claim. Thereupon, on March 11th, contractor filed a mechanic's lien upon the lands upon which the work was done.

To the bill of complaint owner filed his answer, denying liability, and set up liability on the part of contractor, amounting to $24,501.54, being the amount expended by owner in re-enforcing the bulkhead.

Accompanying this answer were a number of affidavits attempting to show the intricate character of the facts involved in the case and alleging that there would be conflict in the evidence upon the merits. Upon the basis of these affidavits, the owner moved the court to direct an issue out of chancery, which motion the court overruled.

Issue being joined by replication to the answer, a decree was entered referring the cause to Hon. James Mann, commissioner, to report the sum, if any, due complainant. In due course, the commissioner filed

his report, showing the owner was indebted to the contractor in the amount sued for, and thereupon the court entered a decree for the sum of $32,744.67. From that decree this appeal was allowed.

The petition for an appeal contains the following assignments of error:

1. The court was in error in overruling the motion of the defendant for an issue out of chancery.

2. The court committed error in finding that the amount due and owing the defendant, and secured by a lien on the property set out in the pleadings, was $32,-744.67 with interest from February 23, 1925, instead of $8,243.13 as claimed in defendant's answer and as shown by the evidence taken before the commissioner.

3. The court committed error in holding that the complainant, Sanford and Brooks Company, was not responsible for the collapse of the bulkhead and other improvements which it had undertaken to construct upon the property of the said defendant.

4. The court was in error in failing to find that the complainant, Sanford and Brooks Company, assumed all responsibility for local conditions in connection with the prosecution of the work comprised within its contract.

5. The court committed error in that it failed to find that the complainant, Sanford and Brooks Company, obligated itself to construct and complete the work covered by the contract between the parties, ready for use by the said defendant.

[1] (1) Section 6246 of the Code provides: "Any court in which a chancery case is pending may direct an issue to be tried in such court or in any circuit or corporation court, and the court shall have the discretion of directing such an issue to be tried before any proof has been taken by either the plaintiff or defendant, if it

shall be shown by affidavit or affidavits after reasonable notice that the case will be rendered doubtful by the conflicting evidence of the opposing parties."

Mere allegation by either the plaintiff or defendant that the case will be rendered doubtful by the conflicting evidence of the opposing party is not sufficient to cause the court to direct an issue out of chancery. Just as in a notice of motion, it is necessary that a right of action be stated before recovery may be had, so in a motion to direct an issue in a chancery cause, the affidavit or affidavits must show the reason for such direction and call in question the exercise of a sound discretion by the court.

[2] In *Miller* v. *Wills*, 95 Va. 35, 28 S. E. 342, it is said: "Directing an issue is not a mere arbitrary discretion. Such discretion must be exercised upon sound principles of reason, and justice. A mistake in its exercise is a just ground of appeal, and the appellate court will judge whether such discretion has been soundly exercised in a given case."

In construing section 3381 (now section 6246) this court, in *Stevens* v. *Duckett*, 107 Va. 17, 57 S. E. 601, said: "We are of opinion that it was not intended by the statute to change the firmly established rule of law that the chancellor was to properly exercise his discretion on sound principles of reason and justice." This case has been approved in *Bunkley* v. *Commonwealth*, 130 Va. 55, 108 S. E. 1, and we are firmly of the opinion that the instant case falls within the rule there laid down.

[3] (2) Reduced to its final analysis, this assignment of error presents the determinative question involved in this litigation. It is the contention of the owner that, under the contract, the contractor was to deliver to the owner a completed structure, and

the bulkhead having given away at the time it did, the contractor was liable for the resulting loss.

In support of the owner's contention, *Lonergan* v. *San Antonio T. Co.*, 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803, is urged upon us. There it was held that the fact that the plans upon which a contractor undertakes to construct a building are so defective that the building falls in the *course of construction* will not relieve him from liability for the loss, or enable him to abandon his contract and retain the compensation he has received. We do not think the question there dealt with is identical with the question under consideration.

In common parlance, the contract in the *Lonergan Case* provided for a "turnkey job." As the structure fell before completion, it was held that the contractor had not performed his contract. In the case at bar, the contract provided for an acceptance of the structure, not by the owner, but "when all the work had been completed and accepted by the architect."

The great preponderance of evidence is to the effect that Mitchell, the architect and superintendent of the owner, supervised the work from its inception to its completion; that he examined the structure when completed, and accepted the same by certifying that the contractor was entitled to a final payment for the work done. It is argued, however, that the certificate given by Mitchell was not an acceptance of the structure. It reads thus:

[4] "Notice.—This certificate is an expression of the architect's opinion and shall at no time be considered as a legal obligation on his part, neither shall the same be considered as an acceptance of any work done or materials furnished."

The language of the certificate is not embodied in the contract. The contract only provides that payments to the contractor shall be made "upon presentation of certificates signed by B. F. Mitchell, architect * *."

There is no merit in the contention that because the certificate provides that it shall not be considered as an acceptance of the work done, that it is paramount to the contract, which specifically provides that the work shall be accepted when approved by Mitchell, who shall evidence his acceptance thereof by the issuance of his certificate.

Our attention is called to the provision in the dredging specification reading thus: "Contractor must visit premises and take his own soundings and assume all responsibility for conditions as they are;" also to the bulkhead specifications providing: "Premises.— Each contractor must visit the premises and satisfy himself as to local conditions and assume all responsibility for the same in connection with the prosecution of the work."

Relative to these provisions the theory of the owner is two-fold: (a) That under the general terms of the contract for the prosecution of the work there was an obligation on the part of the contractor to furnish a completed job which would have been reasonably adapted for use; and (b) that under the provisions of the specifications there was an express obligation on the part of the contractor to satisfy himself as to local conditions and assume all responsibility for the same.

[5] From the evidence of contractor it is clear that the bulkhead gave way because the work was not sufficiently heavy; that the fault lay in the plans and specifications. The owner contends that it gave way

because of the negligence of the contractor, in failing to observe the peculiar conditions of the soil, and in the negligent performance of the work.

On the question of latent conditions, *Dermott* v. *Jones*, 2 Wall. 1, 17 L. Ed. 762, is cited. This case involved a contract for the erection of a building. The foundation sinking, the building was badly cracked and threatened to fall. The owner was compelled to take it down, to remove and renew the foundations, and to rebuild a part of the structure. The question was, who should bear the expense? It was held that the obligation was upon the contractor to turn over to the owner a completed building.

As we are of the opinion that in the instant case the contractor did turn over to the owner a completed structure, the question of liability for a failure to perform a "turnkey job" is not involved. On this phase of the question see *Adams* v. *Tri-City Amusement Company*, 124 Va. 473, 98 S. E. 647.

Now, considering the second phase of the question, we are of the opinion that it is ruled by *Adams* v. *Tri-City, &c., Co.*, *supra*. Judge Prentis, dealing with latent defects in the soil, said: "Whether sufficient or not, under ordinary conditions, it appears that by reason of the low, wet character of the ground and the consequent drainage through it, such a wall as the architect designed was not sufficient to stand the strain of the water and the earth which was washed against it. For such a defect a building contractor cannot be held responsible, for it is his duty to follow the plans and specifications furnished as his guide by the architect as the agent of the owner."

In *United States* v. *Spearin*, 248 U. S. 136, 39 S. Ct. 61, 63 L. Ed. 166, the court dealt with a contention similar to the one here presented as follows:

"Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered. Thus, one who undertakes to erect a structure upon a particular site assumes ordinarily a risk of subsidence of the soil. But if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. This responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work."

[6] In construing the bulkhead specification, that the "contractor must visit the premises and satisfy himself as to local conditions and assume all responsibility for the same in connection with the prosecution of the work, the learned counsel for the owner argues that the contractor is made, by this language, directly responsible for the conduct of the work and for the delivery of the structure completed according to the contract document.

This argument overlooks the key word in this provision, viz, "prosecution." It is not provided that the contractor assumes all responsibility for the "completion" of the work, but only in regard to the "prosecution" thereof. In other words, we think this provision had reference only to the character of the location, or site, whether wet or dry, stable or unstable, soil or rock, and imposes upon the contractor responsibility for the amount of his construction bid and is not a warranty that a structure erected thereon will not collapse, even though erected according to the plans and specifications. This conclusion is, we

think, borne out by the holding in *MacArthur Bros.*
v. *United States,* 258 U. S. 6, 42 S. Ct. 225, 66 L. Ed.
433, and *Simpson* v. *United States,* 172 U. S. 372,
19 S. Ct. 212, 43 L. Ed. 482.

[7] (3) This assignment of error involves discussion
of the following: (a) The method employed by the
contractor in breaking up the concrete roadway that
ran between the proposed slip and warehouse No.
O-1; (b) allowing the small dredge to cut over the
line at a point nearly opposite the southeastern corner
of the warehouse; and (c) allowing the large dredge
used to fasten guy ropes to the tie piles.

(3) It is conceded that the bulkhead specifications
provided for breaking up the concrete road by the
contractor. On the question of whether or not the
method pursued in breaking up the road contributed
to the bulging of the bulkhead, the evidence is con-
flicting. Mitchell, the superintendent of the owner,
said that the movement of the bulkhead was caused
by "a very unusual, unprecedented and unexpected
movement of the earth behind the line of the north
side of the slip and under warehouse No. 1," and was
of the opinion that this movement was the result of
the method employed in breaking up the concrete
road. W. H. Taylor, vice-president of contractor,
expressed the opinion that the method pursued had
nothing to do with the movement of the bulkhead,
and in this view he was sustained by Mr. Simon,
chief engineer of contractor.

H. Fernstrom, a disinterested witness, now chief
engineer of the Virginian Railway, and who has had
forty years experience as an engineer, testified in
substance that the method employed in breaking up
the roadway was a practical and proper one, and that
he saw no connection between the method employed

and the bulging of the bulkhead.   This conclusion is borne out by the undisputed evidence that a part of section "A," some of the eastern part of section "C" and a part of section "D," all distant from the concrete road and in no way affected by the work done thereon, have given away to a considerable extent.

(b) Except in the opinion of non-expert witnesses, there is no connection shown between the work done by the small dredge and the giving way of the bulkhead.   This evidence is lacking in every element of conclusiveness.

(c) This assignment is not dwelt upon at length in the petition.   On the effect of fastening guy ropes to the piles, we think the evidence is against the contention of the owner, and that the finding of the commissioner, which was confirmed by the trial court—that it did not affect the bulkhead—is without error.

Upon the whole case, we are of opinion that the judgment of the trial court should be affirmed.

*Affirmed.*