# Richmond

## W. H. BOSWELL, SHERIFF, ETC. V. W. T. LIPSCOMB.

January 9, 1939.

Record No. 1993.

Present, All the Justices.

The opinion states the case.

*W. A. Willeroy* and *Leon M. Bazile,* for the appellants.

No appearance for the appellee.

BROWNING, J., delivered the opinion of the court.

This case grows immediately out of the alleged breach of a contract or lease of rental.

The parties to the contract are W. T. Lipscomb and W. A. Willeroy, attorney for Luretta and Walter Ludlam, and W. A. Willeroy, personally. By its terms, W. T. Lipscomb agreed to plow, plant, cultivate and harvest a crop of corn on forty acres of land owned by Willeroy. The contract provided specifically for the time when the work was to be done and the manner of doing it. A general stipulation was that the work would be performed in accordance with methods of good farming and good management, and the use of good husbandry throughout. The work was to begin on the 24th of May, 1937, and be completed by the 15th of December, 1937. It was agreed between the parties that the contract was to be regarded as an entirety, that is, if Lipscomb should at any time abandon the work before the completion thereof, he was to receive no compensation or consideration for that part of the work which he had performed.

The consideration upon the part of Willeroy, individually and as attorney, was that when the contract, as an entirety, was fully performed and discharged by Lipscomb, he would cause to be dismissed certain distress proceedings in the circuit court of New Kent county, Virginia,

between the said Ludlams and W. T. Lipscomb, and mark satisfied a judgment which had theretofore been rendered against Lipscomb in favor of the Ludlams. It was further provided that during the period of the performance of this contract the distress proceedings should be in abeyance and remain *in statu quo.*

There was a companion contract between Willeroy, attorney for the Ludlams, and Clay Crenshaw, attorney for W. T. Lipscomb, J. F. Lipscomb and E. V. Lipscomb, which was entered into in pursuance of the promise of performance of the provisions of the first mentioned contract, which stipulated that the distress proceedings, referred to, depending in the circuit court of New Kent county, should be continued from time to time and remain in abeyance in all respects for the purpose of permitting the said W. T. Lipscomb to perform and execute the agreement he had entered into; but if he should fail or refuse to do so, the aforesaid litigation should proceed as though "there had been no break, interruption or continuance of the same."

The presence of J. F. Lipscomb and E. V. Lipscomb as parties, by representation, to the second contract is accounted for by reason of the fact that they had asserted ownership in themselves of certain of the property which was involved in the distress proceedings and which had been levied upon as the property of W. T. Lipscomb.

It is here noted that J. F. Lipscomb is a son of W. T. Lipscomb, and E. V. Lipscomb is a brother. Luretta Ludlam and Walter Ludlam were persons living in Detroit, Michigan, but who owned lands in New Kent county.

W. T. Lipscomb formerly resided in King William county, Virginia, which is adjacent to New Kent. He purchased a large farm there, which was subject to heavy encumbrances. This farm was sold for debt and Lipscomb moved over into New Kent, leaving behind him lien indebtedness of some fifty thousand dollars. He leased the farm in New Kent belonging to the Ludlams, for which he was to pay five hundred dollars per annum. He became in arrears in the payment of the rental money to the extent of four hundred

dollars. A distress warrant was issued at the instance of the Ludlams for the amount of the unpaid rent, and notice under section 6156 of the Code of Virginia was served upon W. T. Lipscomb, he having disclaimed the ownership of certain property, which was in his possession and had been for years, and had been levied upon to satisfy the rent claim.

Let us be mindful of the fact that no liens of any sort against W. T. Lipscomb were recorded in the county of New Kent; therefore persons dealing with him in that county had no constructive notice of the existence of any such liens and no actual notice of them on the part of Willeroy and the Ludlams is charged. This is particularly mentioned because the alleged ownership of the property by J. F. and E. V. Lipscomb was based upon a chattel mortgage, executed in 1930 by W. T. Lipscomb against certain of the property, and a judgment for the unpaid portion of the debt secured by the mortgage of which J. F. Lipscomb was the assignee, and to show lack of ownership in W. T. Lipscomb there was filed a bill of sale as to certain of the property in favor of E. F. Lipscomb. The mortgage was recorded in the county of King William. It does not appear that the judgment was docketed anywhere, or that the bill of sale was recorded at all. The foundation of these claims of ownership is not, however, in our opinion, of major importance, in the consideration of the case, because the court withdrew the issue of ownership from the consideration of the jury in the subsequent proceeding, holding and deciding that the property was liable to the levy. The jury confined its verdict to a single issue which was the breaching of the contract, although another issue, based on the charge that W. T. Lipscomb had taken from the Willeroy premises certain farming implement parts which belonged to Willeroy, was ignored; therefore the court ordered that Willeroy recover the same of Lipscomb.

The court sustained the verdict of the jury and enjoined the sale of the property which had been levied upon and

enjoined Willeroy and the Ludlams from any proceeding against Lipscomb relating to any claim for rent theretofore sued for and from the enforcement of the collection of the judgment obtained by them and further decreed that Willeroy, or someone for him, should forthwith mark the said judgment satisfied.

The case presents such a factual complexity as to render it difficult to state it in satisfactory sequence. The appellant quite accurately states this circumstance when he says: "In fact, the several matters are so completely interwoven and interlocked throughout and the chancery proceeding is so completely dependent upon what took place in the distress case which was prior to the chancery cause, that it will be practically impossible to pass upon the questions raised in the chancery cause without knowing the facts in the distress case. In fact, the chancery cause calls for a decision of the matters in dispute in the distress case without giving the court necessary and sufficient facts to make an intelligent decision."

By the distress warrant, and the levy thereunder, the collection of the rent claim was sought. Upon W. T. Lipscomb's claim that the property under levy was not his own, notice under section 6156 of the Code was served upon him in person and as the agent of the claimant of the property. Lipscomb made defense by filing an affidavit that he was unable to give the bond required by section 6518 of the Code and that he had a valid defense under section 6522 and that under section 6519 he wished the property levied on to remain in his possession at his risk and asked the court to pass upon the same. It is alleged by the appellant, which is not controverted, that at the hearing of the case on May 3, 1937, the sole defense was that most of the property levied upon was not that of W. T. Lipscomb, but belonged to his son and a brother, heretofore referred to, who personally and actively urged this defense and introduced numerous witnesses in their behalf. The court thereupon gave judgment for the amount of the rent claimed and directed the sheriff to sell the property levied upon to satisfy

such judgment, but it stayed the proceedings for a period of ninety days at the instance of W. T. Lipscomb, provided he would execute a bond within five days in the penalty of $500.00. That the bond was given does not appear.

The date of the execution of the notice under section 6156 was March 3, 1937, and it appears that no suspending bond was given by Lipscomb and no effort was made by him to have settled the title to the property which had been levied on (both actions being required by section 6156 of the Code), until more than thirty days had elapsed from the date of the notice or the time required to give the suspending bond. Therefore, under the statute at the time the defense of ownership of the property by J. F. and E. V. Lipscomb was again made, the provision of the statute establishing the conclusive presumption that the property in question was the property of the party in possession, was in effect.

This, in our opinion, concluded the question of the ownership of the property and established the validity of the levy.

Over the objection of the plaintiffs, the defendants, J. F. Lipscomb and E. V. Lipscomb, were allowed to file petitions and statements reopening and reasserting the question of ownership.

In the face of a probably indefinite prolongation of litigation which doubtless had already become tedious and irksome, Willeroy, desiring to have his land tilled and planted in corn, offered this work to W. T. Lipscomb, upon a consideration which would afford him an opportunity to clear himself of the burden of the Ludlam judgment and the annoyance of the pendency of the distress proceedings. Thus we have the contract, to which we have referred in detail, the alleged breach of which is the issue of present moment.

The action of the trial court in directing an issue out of chancery is assailed as error, by the appellants. The soundness of this contention is obvious.

Of the issues presented to the jury, one had been concluded and set at rest, as we have pointed out, though it was

withdrawn from the jury by the court, after the evidence had been presented, and decided in favor of the appellants.

The action of the court in directing the issues out of chancery was based solely upon the affidavit of the attorney for the plaintiff to the effect that there was conflicting evidence which would render doubtful the issues involved.

If this were all that is necessary to accomplish the end sought, then under like stress of occasion, one of the litigants in chancery would be invariably deprived of the privilege of having his rights determined by an able, impartial and learned judge.

This court, upon numerous occasions, has been concerned with this question and it said in the case of *Stevens* v. *Duckett,* 107 Va. 17, 57 S. E. 601, 603:

"The rule has been that the defendant cannot be deprived, by an order of court for an issue, of his right to a decision by the court on the case as made by the pleadings and the proof, unless the conflict of the evidence is so great and its weight so nearly evenly balanced that the court is unable to determine on which side the preponderance is.

   \*    \*    \*    \*    \*    \*    \*

"In deciding the question, this court should not be influenced by any matters connected with the testimony taken on the trial, but should look simply at the state of the proof existing when the issue was ordered. The mere fact that there was an issue directed and tried, and a verdict rendered for the plaintiff, affords no reason why the court should not reverse the decree if the order directing the issue was improperly granted."

Continuing on the same page, the court quoting from the opinion in the case of *Smith's Adm'r* v. *Betty,* reported in 11 Gratt. (52 Va.) 752, said, "In the case of *Pryor* v. *Adams,* 1 Call (5 Va.) 382, 1 Am. Dec. 533, this court held that it was its duty, in reviewing a decree founded on the verdict of a jury, rendered on an issue out of chancery, to look to the state of the proofs existing at the time when the issue was ordered; and if satisfied that the chancellor had improperly exercised his discretion in directing the issue,

to render a decree, notwithstanding the verdict, according to the merits, as disclosed by the proofs on the hearing when the issue was ordered."

The case of *Bunkley* v. *Commonwealth,* 130 Va. 55, 108 S. E. 1, was held to be controlled by that of *Stevens* v. *Duckett, supra.*

Attention is directed to the affidavits filed in both of these cases, upon which the trial courts directed issues out of chancery, and in which this court held the issues to have been improperly awarded. We think the learned chancellor in the case in judgment was in error in directing the issues out of chancery.

We are aware of the force of a verdict of a jury which is sustained by the court, but this court has never hesitated to exercise its power to set aside a jury's verdict and reverse the judgment of the trial court when it thought them clearly wrong.

In this case it is patent that the evidence is preponderatingly in favor of Willeroy, the defendant. It presents a pathetic picture of a drowning man catching at straws. Lipscomb was weighted down with debt. He was doubtless harassed by creditors and goaded to a point of desperation. One in that condition of discouragement finds it difficult, if not impossible, to work out his economic salvation. So it was with him. He began his job on the last day upon which he could begin it under the contract. He never finished it. He was always late. The ground was not in working condition—the weather was never propitious. It is no new story. We see it every day. The corn that was planted grew, and so did the weeds and grass. The crop was not worked until some of the corn was so high that the implement, with which a belated effort was made to tend it, would have broken down all that was worth while. The smaller corn became yellow and hard from neglect, and it was beyond recall. One of the outstanding farmers of the vicinity said that he would not gather the crop for it. Others testified that it had not been worked in a farmer-like manner or in accordance with the demands of good husbandry,

and that it was so far gone as to be beyond recovery. It is remarkable that neither the plaintiff nor his witnesses testified that the provisions of the contract had been lived up to.

It is noteworthy to say that Willeroy began writing to Lipscomb on the 8th of June, 1937, and the sixth of these letters was dated July 14, 1937. All of them were upon the subject of getting the work done which was incident to making the crop. They were urgent, insistent and beseeching, but to no avail. Willeroy's conduct was friendly and conciliatory throughout, and to our minds he was without fault when he forbade Lipscomb to attempt to do anything under the contract at a time when any effort would be wholly useless and futile.

That Lipscomb breached the contract is beyond cavil. We affirm the decree of the court as to its holding that the property was liable to the levy and that the iron bars, or implement parts, be recovered by Willeroy from W. T. Lipscomb, but we reverse the judgment of the court in sustaining the verdict of the jury, and we remand the case to the trial court with the direction that a decree be entered therein which will effect the principles enunciated herein.

*Affirmed in part, reversed in part
and remanded.*