## Richmond

COMMONWEALTH OF VIRGINIA

V.

## CROATAN BOOKS, INC.

Record No. 831798.

November 30, 1984.

Present: All the Justices.

*William J. Minor, Jr., Assistant Commonwealth's Attorney (Robert F. Horan, Jr., Commonwealth's Attorney*, on brief), for appellant.

No brief or argument for appellee.

COCHRAN, J., delivered the opinion of the Court.

Pursuant to the provisions of Code § 48-8, Robert F. Horan, Jr., Commonwealth's Attorney of Fairfax County, filed a bill of complaint in the name of the Commonwealth against Croatan Books, Inc., t/a Showplace Books (Croatan Books). The bill sought to enjoin an alleged nuisance arising from illicit sexual activity on the premises of Croatan Books.

At a hearing on June 9, 1983, to determine whether a temporary injunction should be ordered, the Commonwealth presented evidence that the store was a place where, with the knowledge and occasional complicity of employees, homosexuals congregated to engage in acts of oral sodomy, mutual masturbation, and indecent exposure. These acts were performed in the area of the store where booths were provided for patrons to view erotic films by the use of token-operated projectors. There were approximately 100 projectors available for such use. The trial court ordered, with the agreement of the parties, that Croatan Books rope off two of the four movie booth access ways, repair any openings between the booths, and hire uniformed guards to prevent loitering in the hallways and use of any booth by more than one patron at a time.

A second hearing was conducted on July 21, 1983, and written memoranda of law were submitted by the parties. On August 4, 1983, the trial court entered an order finding that the Commonwealth had shown by clear and convincing evidence that criminal sexual activity existed on the premises of Croatan Books of such a continuous and pervasive nature as to constitute a public nuisance as defined in Code § 48-7.[1] The court then held that Code § 48-

---

[1] Code § 48-7 provides:

12² is unconstitutional as applied to the facts of the case because it "reaches far beyond the remedy necessary for the abatement of the complained of nuisance." Holding that under its general equitable powers the court could fashion a remedy to abate the nuisance, the court ordered Croatan Books to remove by a specified date all movie booth partitions and enjoined it from "erecting any other partitions, enclosures or other devices which totally or partially obstruct the visibility of the viewer of any movie or film from common observation."

The Commonwealth argues that the trial court erred in holding Code § 48-12 unconstitutional in its application and in declining to comply with the provisions of that statute by ordering the closure of the store. We agree.

■ In various cases, we have held that a civil forfeiture based on violations of criminal law is constitutional. Thus, in *Bunkley* v. *Commonwealth*, 130 Va. 55, 108 S.E. 1 (1921), we upheld the predecessor statute to Code § 48-12. We held that the forfeiture provision invoked to abate the operation of a brothel in violation of the nuisance statute was a proper exercise of the Commonwealth's police power. *Id.* at 68, 108 S.E. at 5. To the same effect are *McNelis* v. *Commonwealth*, 171 Va. 471, 198 S.E. 493 (1938) (closure of premises used in violation of Alcoholic Beverage Control Act), *Quidley* v. *Commonwealth*, 190 Va. 1029, 59 S.E.2d 52

§ 48-7. Houses and contents are nuisances subject to abatement.—Whoever shall knowingly erect, establish, continue, maintain, use, own, occupy or lease any building, erection or place used for the purpose of lewdness, assignation or prostitution in the State is guilty of a nuisance, and the building, erection, or place, the ground itself, in or upon which such lewdness, assignation or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided.

² Code § 48-12 provides:

§ 48-12. Order of abatement of nuisance; sale of furniture, etc.; closing of building.—If the existence of the nuisance be established in such suit in equity, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case, which order shall direct the removal from the building or place of all fixtures, furniture, musical instruments, or movable property used in conducting the nuisance, and shall direct the sale thereof in the manner provided for the sale of chattels under execution, and shall decree the effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released. If any person shall break and enter or use a building, erection, or place so directed to be closed he shall be punished as for contempt, as provided in the preceding section.

(1950) (forfeiture of car and money used in illegal numbers game), and *Commonwealth* v. *Lincoln Automobile*, 212 Va. 597, 186 S.E.2d 279 (1972) (forfeiture of automobile driven by owner while license suspended). Because Croatan Books's dissemination of ideas through books, magazines, and films, however, is presumptively protected under the First Amendment, we must consider the impact of the statute on First Amendment rights.

The First Amendment does not protect obscenity. *Roth* v. *United States*, 354 U.S. 476, 485, *reh'g denied*, 355 U.S. 852 (1957). There is no evidence, however, that the materials sold and exhibited in the store were obscene. Thus, the effect of the application of the abatement provisions of Code § 48-12 is to restrain Croatan Books's constitutionally-protected distribution of books, magazines, and films. The crucial question is whether any such infringement upon First Amendment rights is merely incidental to furtherance of an important governmental interest.

In *United States* v. *O'Brien*, 391 U.S. 367, *reh'g denied*, 393 U.S. 900 (1968), the Supreme Court upheld a statute prohibiting destruction of a draft registration card although in its operation the statute incidentally suppressed an individual's right of free symbolic speech. The following four-part test was enunciated:

> we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377.

Enactment of a statute providing for abatement of a public nuisance is clearly within the legislature's power. *See Bunkley*, 130 Va. at 68, 108 S.E. at 5. Moreover, the governmental interests to be furthered by such a statute are important and substantial. The Commonwealth has a paramount interest in eliminating criminal sexual activity. Abatement under the nuisance statute may be the only effective recourse against owners who permit unlawful sexual conduct on their premises and derive an economic benefit from the business generated by such conduct.

The governmental interest in eliminating a pattern of criminal sexual activity is unrelated to the suppression of free expression. The type of governmental censorship proscribed by the First Amendment is control of the content of communication. *See Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50, 64-65, *reh'g denied*, 429 U.S. 873 (1976) (in which the Supreme Court upheld zoning ordinances classifying and regulating "adult" motion picture theaters differently from other theaters). Where, as here, the intrusion on free expression is not based on the message, ideas, subject matter, or content of the materials distributed, but on criminal activities occurring at the site, the governmental interest is constitutionally unrelated to the intrusion. *Compare Spokane Arcades, Inc.* v. *Brockett*, 631 F.2d 135 (9th Cir. 1980), *aff'd mem.*, 454 U.S. 1022 (1981), *reh'g denied*, 454 U.S. 1165 (1982) (where a Washington nuisance statute prohibiting distribution of "lewd matter" was held to be unconstitutional as an impermissible prior restraint of potentially obscene material).

Thus, Code § 48-12 was clearly justified under the first three parts of the *O'Brien* test. The trial court, however, ruled that the statute was not justified under the fourth part of the test. The court was of opinion that the statute was unconstitutional in its application to Croatan Books because it imposed a restriction on First Amendment freedoms greater than is essential to the furtherance of the governmental interest in abating the nuisance. A remedy less restrictive than the closure mandated by the statute was then devised and incorporated in the final order entered by the trial court. As the remedy bore a marked similarity to one approved in *People* v. *Adult World Bookstore*, 108 Cal. App. 3d 404, 166 Cal. Rptr. 519 (1980), we will analyze two earlier California decisions and that case.

In *People ex rel. Van de Kamp* v. *American Art, Etc.*, 75 Cal. App. 3d 523, 142 Cal. Rptr. 338 (1977), the court examined the California Red Light Abatement Law to determine the scope of injunctive relief applicable to a publisher whose premises constituted a center for prostitution.[3] The court noted the tension inherent in application of an abatement law to premises used for consti-

---

[3] The statutory language of the California law is almost identical to the Virginia nuisance provision. The California Supreme Court, however, had earlier interpreted the mandatory wording of the abatement section as not requiring closure but as vesting in the trial court broad discretion to fashion an appropriate abatement remedy. *Selowsky* v. *Superior Court*, 180 Cal. 404, 412-13, 181 P. 652, 656 (1919).

tutionally-protected publication. *Id.* at 529, 142 Cal. Rptr. at 341. Applying *O'Brien* principles, however, the court held that prohibition of prostitution and pandering properly furthers a substantial governmental interest unrelated to speech or press. *Id.* at 531, 142 Cal. Rptr. at 342. The court further held that the burden is on the state to show that regulation of the prohibited conduct does not infringe on First Amendment rights any more than is necessary to vindicate the governmental interest. *Id.*, 142 Cal. Rptr. at 342.

In *People ex rel. Sorenson* v. *Randolph*, 99 Cal. App. 3d 183, 160 Cal. Rptr. 69 (1979), a club featuring pornographic films, nude dancing, hired female companionship, solicitation by waitresses, and masturbation performed on customers was closed under the California abatement statute. *Id.* at 187, 160 Cal. Rptr. at 70. The court found that the interference with free speech resulting from closure was minimal while the state's interest in abating the nuisance was substantial. *Id.* at 189-90, 160 Cal. Rptr. at 72. The court further rejected the contention that a more narrowly drawn remedy could have abated the nuisance. Because the club had ignored prior warnings and allowed continued lewd conduct on the premises while a temporary injunction was in effect, closure was not unreasonable. *Id.* at 190, 160 Cal. Rptr. at 72.

*Adult World Bookstore* is factually analogous to the present case. There, the court upheld the temporary relief ordered against two bookstores containing movie booth areas in which patrons engaged in pervasive sexual activity. The lower court, by temporary injunction, ordered the bookstore operators to post signs prohibiting more than one person to a booth, prohibiting loitering, and warning that unlawful sexual conduct was prohibited. The court also ordered the operators to close all openings between partitions, make other modifications in the booth area, and patrol the area. 108 Cal. App. 3d at 407-08, 166 Cal. Rptr. at 521. The appellate court upheld this preliminary injunctive relief. *Id.* at 411, 166 Cal. Rptr. at 523. Although the issue of final abatement was not reached in the case, the court stated that closure is improper unless there is no other way to prevent recurrence or continuation of the nuisance. *Id.* at 409, 166 Cal. Rptr. at 522.

The distinctive feature of the California cases is apparent. In that jurisdiction, the mandatory language of the abatement statute has been construed by the California Supreme Court to be merely permissive, so that trial courts are given broad discretion-

ary authority to devise some remedy other than closure. *See American Art*, 75 Cal. App. 3d at 529, 142 Cal. Rptr. at 340-41. We have given no such construction to the Virginia statute, nor do we do so now. But, unlike the trial court, we do not conclude that the mandatory abatement remedy makes the statute unconstitutional in its application to Croatan Books. The General Assembly has determined that the only way to abate the nuisance arising from criminal sexual activity on the premises is to close the store. It was the prerogative of the General Assembly to make that determination.

It is true, of course, that without objection the trial court initially ordered relief designed to eliminate the nuisance without affecting the First Amendment right to distribute materials and exhibit films. The Commonwealth introduced evidence at the second hearing showing that the temporary order had been ineffective to eliminate loitering and solicitation of criminal sexual activities in the area of the movie booths. Thus, what purported to be less restrictive remedial measures failed to abate what the trial court had unequivocally found by clear and convincing evidence to be a nuisance under the provisions of Code § 48-7. This failure vindicates the legislative determination that closure is necessary to abate the kind of outrageous criminal activity disclosed by the record.

We hold that under the facts of this case closure is a proper exercise of the Commonwealth's police power and satisfies the *O'Brien* test for incidental, permissible infringement on First Amendment freedoms. Having found that a nuisance was being maintained on the premises of Croatan Books, the trial court was required to comply with the abatement provisions of Code § 48-12. Accordingly, we will reverse the judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*