*326 OPINION OF THE COURT
Chief Judge Wachtler.
Plaintiff, the District Attorney of Erie County, has brought this action under Public Health Law, article 23, title II to permanently enjoin any conduct constituting lewdness, assignation or prostitution at a bookstore operated by defendant, Cloud Books, Inc., and to obtain an order of abatement which would close the premises for one year. The issues on this appeal are whether the statute under which the District Attorney proceeds applies to the type of business run by Cloud Books, and if so, whether the mandatory closure provision of the statute, on these facts, would be an impermissible prior restraint.
I.
Defendant, Cloud Books, Inc., operates a bookstore, The Village Books and News, on premises which it leases in the Village of Kenmore.[1] The store sells books and magazines of a sexually frank nature and contains several coin-operated movie machines showing sexually explicit material. There are no specific allegations in this action that any of these items are obscene.
In September 1982, as part of an investigation initiated by the Erie County District Attorney, a deputy sheriff, working undercover, made several visits to the bookstore. In an affidavit recounting his visits, the officer specified various lewd and illegal acts he had witnessed. Based on this information, the District Attorney commenced the present action on behalf of the People seeking to enjoin the illicit conduct and to close the premises. The verified complaint alleges that the deputy sheriff observed sexual activity by patrons of the store, including four acts of masturbation and one act of fellatio, and was himself solicited for sexual conduct for a fee by persons on the premises on several occasions. The District Attorney also alleges that defendant was aware of these activities and permitted them to occur as long as the persons involved also spent some money on the books, magazines or movie machines in the store.
The complaint sets forth two causes of action. The first cause of action, sounding in common-law nuisance, was dismissed by Special Term and is not at issue on this appeal. The second cause of action is based on Public Health Law, article 23, title II, entitled “Houses of Prostitution: Injunction and Abatement”. Title II allows a District Attorney to bring an action to perma *327 nently enjoin conduct constituting a nuisance, as defined in Public Health Law § 2320, which provides:
“1. Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance.
“2. The building, erection, or place, or the ground itself, in or upon which any lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are hereby declared to be a nuisance and shall be enjoined and abated as hereafter provided.”
Sections 2321-2328 set forth the procedure to be followed for the trial of an action for a permanent injunction, the scope of such an injunction, and the penalties for violating it. Section 2329 provides that where a nuisance, as defined in section 2320, is established, the final judgment must include an order of abatement, which “shall direct” the removal and sale of all fixtures or movable property used in conducting the nuisance and “shall direct the effectual closing of the [premises] against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released as hereinafter provided.” Section 2332 provides that a court may cancel an order of abatement if the owner of the premises pays all the costs of the proceeding and files a bond for the full value of the property.
The complaint alleges that defendant has been “maintaining, using and occupying” the premises in question as well as the “furniture, fixtures and personal property contained therein” “for the purpose of lewdness, assignation and prostitution”. The relief sought includes the permanent injunction and order of abatement provided for by statute.[2]
Defendant moved for partial summary judgment on the statutory cause of action, arguing that title II was intended to cover only houses of prostitution, and thus was inapplicable to a store selling books and magazines, and that the relief requested, in particular the order of abatement, would in any event constitute a prior restraint prohibited by the First Amendment to the United States Constitution and NY Constitution, article I, § 8. Though defendant’s verified answer denies the allegations of *328 sexual activity in the bookstore and states that even if any such activity did occur, it was not authorized or condoned by its employees, for purposes of this motion it admits the truth of these allegations.
Special Term denied the defendant’s motion for summary judgment, holding that title II could apply to a bookstore if there was a factual finding that the premises were “used for the purpose of lewdness, assignation, or prostitution”, and that none of the relief requested would work an impermissible prior restraint. The Appellate Division affirmed, holding that the statute could be applied whenever the plaintiff established “a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use” (101 AD2d 163, 168), and rejecting defendant’s constitutional argument.[3] That court then granted defendant’s motion for leave to appeal to us, and, pursuant to CPLR 5713, certified the following questions:
“(1) Whether Title II, Article 23 of Public Health Law is applicable to enjoin nuisance occurring on premises other than a house of prostitution?
“(2) Do statute’s mandatory closure provisions constitute an impermissible prior restraint?”[4]
*329 II.
The first version of what is now title II was enacted in 1914 as Public Health Law article 17-a, and was entitled “Suppression of Certain Nuisances” (L 1914, ch 365, § 1). The 1914 statute provided for only injunctive relief, and was aimed at any building in which “assignation or prostitution” was conducted. In 1927, the Legislature, apparently not content with the effectiveness of the 1914 statute, repealed that version and enacted a statute (tit 17-a) which covered any building used for “lewdness, assignation or prostitution” and provided for an order of abatement (see, L 1927, ch 670). The present version of title II is essentially a reenactment of the 1927 statute, and there has been no change with respect to its applicability (see, L 1953, ch 879). New York was not alone in passing a “nuisance abatement” statute in the early 20th century, as statutes virtually identical to the 1927 act were enacted in numerous States, all modeled after a 1909 Iowa law (see generally, State ex rel. Wayne County Prosecutor v Diversified Theatrical Corp., 396 Mich 244, 246-250, 240 NW2d 460, 461-462).
Defendant’s first argument with respect to the scope of title II is that it applies only to places which are houses of prostitution, as that term is commonly known. Defendant bases this argument on the title of title II (“Houses of Prostitution: Injunction and Abatement”) and the titles of the individual sections (“Houses of Prostitution * * *”), on parts of the legislative history of the 1927 act which reveal a concern for such places, and on language in several decisions from other States suggesting this limited scope. None of these contentions is persuasive. While the title of a statute might in some cases aid in its interpretation, it is the language of the actual statutory provisions which determines the meaning of the act. (See, e.g., Squadrito v Griebsch, 1 NY2d 471, 475.) Here, section 2320, by its terms, covers any building used for the purpose of lewdness, assignation or prostitution as well as a building in which any *330 such conduct occurs, and is thus unambiguously broader in reach than its title would suggest.[5]
Defendant’s reliance on the legislative history of the 1927 act is unavailing. While it is clear that the Legislature intended that the statute could be utilized to shut down houses of prostitution, there is no indication that it intended that its application be restricted to that function. Rather, at the time of concern about the spread of “red light districts” and “commercialized vice,” the Legislature in 1927, as noted above, actually broadened the reach of the statute. Thus, there is no legislative intent which would override the plain meaning of section 2320. While decisions from other States interpreting virtually identical statutory provisions are instructive, the weight of such authority does not support defendant’s argument. In most of the cases on which defendant relies (see, State ex rel. Clemens v Toneca, Inc., 265 NW2d 909 [Iowa]; State ex rel. Wayne County Prosecutor v Diversified Theatrical Corp., 396 Mich 244, 240 NW2d 460, supra; State ex rel. English v Fanning, 97 Neb 224,149 NW 413; State ex rel. Carroll v Gatter, 43 Wn 2d 153, 260 P2d 360), the courts held only that the nuisance abatement statute did not apply either because none of the acts cited by the plaintiffs was within the conduct proscribed by the statute or because there had been no evidence to show that the premises were used “for the purpose of” lewdness, assignation or prostitution. In numerous other cases, courts in other States have applied their statute to places which were not houses of prostitution, as the term is commonly known (see, e.g., State v B. Bar Enters., 133 Ariz 99, 649 P2d 978; People ex rel. Van De Kamp v American Art Enters., 75 Cal App 3d 523, 142 Cal Rptr 338; People v Adult World Bookstore, 108 Cal App 3d 404,166 Cal Rptr 519; State ex rel. Wayne County Prosecuting Attorney v Levenburg, 406 Mich 455, 280 NW2d 810; Commonwealth ex rel. Lewis v Allouwill Realty Corp., 330 Pa Super Ct 32, 478 A2d 1334). While there are few cases from this State on point, in at least two instances other than the present action, the lower courts have applied title II to a location despite the presence of some other legitimate activity on the premises (see, People v Macbeth Realty Co., 63 AD2d 908; People v Morbel Realty Corp., 87 Misc 2d 989).
Defendant’s second argument concerning the scope of title II is that the People must show that the “primary purpose” for which *331 the building in question is being used is lewdness, assignation or prostitution, an allegation not made by the plaintiff. Again, however, defendant’s contention is refuted by the language of section 2320. The language “for the purpose of” in section 2320 (1) does not support defendant’s position, as a building clearly can be used for more than one purpose, and the language “in or upon which any lewdness [is present]” flatly contradicts it. To the extent that the Supreme Court of Washington established a “primary purpose” test in State ex rel. Carroll v Gatter (supra), we decline to follow that decision. We note instead the application of other States’ statutes under circumstances similar to those alleged here in People v Adult World Bookstore (supra), People ex rel. Van De Kamp v American Art Enters. (supra), Commonwealth v Croatan Books (228 Va 383, 323 SE2d 86), and Commonwealth ex rel. Lewis v Allouwill Realty Corp. (supra).
Thus, we reject defendant’s contentions as to the scope of title II and agree with the lower courts that plaintiff’s allegations raise a question of fact as to its applicability here. That is not to say, and we do not hold, that any premises on which an isolated act of lewdness, assignation or prostitution occurs is subject to the remedies of title II. Rather, we agree with the Appellate Division that “the People will have to show a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use.” (101 AD2d, at p 168.) The most significant factors in making this factual determination will be the frequency of the conduct, the knowledge or even encouragement by the defendant of its existence, and the extent of the benefit, direct or indirect, derived by defendant from such activity. Finally, the fact that defendant’s bookstore is an “adult” bookstore featuring sexually explicit material is by itself of no relevance, as nothing in section 2320 supports the application of title II to a premise based on the content of material sold or displayed there (see, People ex rel. Busch v Projection Room Theater, 17 Cal 3d 42, 60-61, 550 P2d 600, 611, cert denied sub nom. Van de Kamp v Projection Room Theater, 429 US 922; People v Goldman, 7 Ill App 3d 253, 287 NE2d 177; State ex rel. Wayne County Prosecutor v Diversified Theatrical Corp., supra; State v Morley, 63 NM 267, 317 P2d 317).
III.
The additional relief requested by the District Attorney pursuant to title II is an order of abatement under section 2329 which would close for all purposes, for a period of one year, the premises where defendant operates its bookstore. Defendant’s constitutional argument is that closure of the premises will *332 prevent the sale of materials protected by the First Amendment, and thus constitutes an impermissible prior restraint.[6]
It is beyond dispute that the activity of selling books is entitled to the protections of the First Amendment (see, e.g., Smith v California, 361 US 147), and any limitation by a State of First Amendment freedoms must be premised upon “a compelling state interest in the regulation of a subject within the State’s constitutional power to regulate” (N. A. A. C. P. v Button, 371 US 415, 438). A regulation which suppresses speech in advance of its publication or distribution may be subject to particularly close scrutiny as a prior restraint (see, e.g., Southeastern Promotions v Conrad, 420 US 546, 558-559; Near v Minnesota, 283 US 697). The Supreme Court has stated that “[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity” (Bantam Books v Sullivan, 372 US 58, 70), and has justified this treatment of prior restraints on “a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand” (Southeastern Promotions v Conrad, 420 US, at p 559, supra [emphasis in original]). A statutory scheme subject to this scrutiny will be upheld only if it falls within certain narrow categories established by the Supreme Court and contains procedural safeguards designed to prevent the establishment of a censorship system (id.; see, Note, Padlocks and Prior Restraints, supra, n 6, at 1495).
The lower courts rejected defendant’s argument that the principles set forth in Near and Southeastern Promotions applied to the closure of its bookstore. Special Term stated that closure would involve only the abatement of a nuisance, and would not be a prior restraint of presumptively protected materials, and the Appellate Division similarly noted that, by requesting closure of the bookstore, “the People seek only to employ the statute to enjoin illegal conduct occurring on the premises, not to regulate the content of materials disseminated by the store” (101 AD2d, at p 172). The District Attorney urges affirmance on *333 this ground, arguing that closure of the bookstore would have no First Amendment implications.
Courts have broadly recognized that curtailment of a person’s ability to exercise freedom of expression based on prior actions can raise First Amendment concerns. In People v Taub (37 NY2d 530, 534), we held that a municipality’s denial of a permit for the use of sound amplification equipment based on the applicant’s prior conviction of a crime was an impermissible prior restraint. Many courts have held that denial or revocation of a license to operate a movie theater on the ground of a conviction for showing or distributing obscenity violates the First Amendment rights of the applicant or licensee (see, e.g., Gayety Theatres v City of Miami, 719 F2d 1550; Cornflower Entertainment v Salt Lake City Corp., 485 F Supp 777; Natco Theatres v Ratner, 463 F Supp 1124; Perrine v Municipal Ct., 5 Cal 3d 656, 488 P2d 648, cert denied 404 US 1038; Alexander v City of St. Paul, 303 Minn 201, 227 NW2d 370; Hamar Theatres v City of Newark, 150 NJ Super 14, 374 A2d 502). These courts based their decisions on the prior restraint doctrine, stressing the effect that the action would have on presumptively protected films. As stated by the Supreme Court of California, “to permit denial of a license because of a past conviction [for selling obscene material] would do more than create a hazard to protected freedoms; it would suppress them altogether. The penalty for [the criminal violation] does not include a forfeiture of First Amendment rights” (Perrine v Municipal Ct., 5 Cal 3d, at p 665, 488 P2d, at p 653, supra).
In numerous other cases, courts have considered the constitutionality of provisions of statutes which provide for an order of abatement closing a bookstore or movie theater for one year based on a showing that some obscene material was sold or exhibited on the premises (see generally, Note, Padlocks and Prior Restraints, supra, n 6). Virtually every court which has addressed this question has held that such a provision violates the First Amendment (see, e.g., General Corp. v State ex rel. Sweeton, 294 Ala 657, 320 So 2d 668, cert denied 425 US 904; People ex rel. Busch v Projection Room Theater, 17 Cal 3d 42, 550 P2d 600, cert denied sub nom. Van de Kamp v Projection Room Theater, 429 US 922, supra; Sanders v State, 231 Ga 608, 203 SE2d 153; State v A Motion Picture Entitled “The Bet’, 219 Kan 64, 547 P2d 760; Gulf States Theatres v Richardson, 287 So 2d 480 [La]; State ex rel. Andrews v Chateaux, 296 NC 251, 250 SE2d 603, vacated on other grounds 445 US 947; City of Minot v Central Ave. News, 308 NW2d 851 [ND], appeal dismissed 454 US 1117; State ex rel. Field v Hess, 540 P2d 1165 [Okla]). Again, *334 the rationale underlying these decisions is the prior restraint doctrine set forth in Near and subsequent Supreme Court cases. Essentially, the courts have recognized that the mere fact that some of the material sold in a store can be suppressed as obscene does not provide a constitutional basis for labeling the store itself a “nuisance” and thus subject to closure.
The District Attorney cites two cases which have upheld closure provisions pertaining to obscenity, relying particularly on State ex rel. Ewing v A Motion Picture Film Entitled “Without a Stitch” (37 Ohio St 2d 95, 307 NE2d 911, appeal dismissed sub nom. Art Theater Guild v Ewing 421 US 923). The court in Ewing, however, in upholding the closure of a movie theater for one year based on the showing of one obscene film, stated that the “nuisance” was the exhibition of the particular film declared obscene, and thus the owner could obtain release from the closure order by demonstrating that this one film would no longer be shown (37 Ohio St 2d, at p 105, 307 NE2d, at pp 917-918, supra; see, State ex rel. Leis v Barton Co., 45 Ohio App 2d 249, 253, 344 NE2d 342).[7]
The District Attorney also argues that the obscenity closure cases are not dispositive as they concern a restraint based on the content of material whereas in the present case, closure would be based on conduct and would be aimed at preventing recurrence of that conduct. We agree that the highest degree of protection is most appropriate where the government attempts to restrain future expression because of its content or the content of past expression (see, e.g., New York Times Co. v United States, 403 US 713; Organization for a Better Austin v Keefe, 402 US 415). We do not agree, however, that the mere fact that closure of defendant’s bookstore would not be based on the content of any materials sold there means that defendant’s First Amendment rights would not be implicated. An ordinance which prohibited all exercise of First Amendment rights in all public areas would be just as unconstitutional as one barring only expression with some particular content.
Although the fact that a premises houses a bookstore rather than some other commercial enterprise does not provide it with immunity from all regulation, bookstores operating as such may *335 not simply be equated with ordinary nuisances or with personal property subject to forfeiture (see, e.g., Vance v Universal Amusement Co., 445 US 308, 315; Natco Theatres v Ratner, 463 F Supp 1124,1130, supra; Commonwealth v Croatan Books, 228 Va 383, 323 SE2d 86, 88, supra). What the District Attorney’s argument fails to address is the effect which closure of the bookstore would have on protected expression. Prior restraints or other restrictions on First Amendment rights may be present not only where a statute directly prohibits expression but also where the impact of the statute curtails the exercise of these rights (see, e.g., Secretary of State of Md. v Munson Co., 467 US _, 104 S Ct 2839, 2851, n 12; Southeastern Promotions v Conrad, 420 US, at pp 552, 556, n 8, supra; Healy v James, 408 US 169, 183).[8]
Thus, while the reasons underlying the closure of a bookstore under title II are relevant in determining the constitutionality of the closure, good motivations alone are not dispositive. In Matter of Nicholson v State Commn. on Judicial Conduct (50 NY2d 597, 607), we stated that “[a] proper analysis calls for examination of the degree of interference with the First Amendment interests, the strength of the governmental interest justifying the restriction and the means chosen to prevent the asserted evil”. The Supreme Court has similarly held that where a law designed to serve a legitimate interest effectively limits the exercise of First Amendment rights, it will be invalidated if the interest could be served by means not affecting those rights (see, e.g., Village of Schaumberg v Citizens For a Better Environment, 444 US 620, 637; Shelton v Tucker, 364 US 479, 488).
Our test set forth in Nicholson most closely resembles the Supreme Court’s decision in United States v O’Brien (391 US 367). In O’Brien, the Court held that where “speech” and “non-speech” elements are combined in the same course of conduct, a law aimed at the “nonspeech” elements, but having an “incidental” effect on the protected expression, is justified “if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the govern *336 mental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest”. (391 US, at p 377.)
The Supreme Court has applied the O’Brien test, or a substantially similar analysis, in reviewing zoning ordinances which have a purpose other than suppressing protected speech, but which have incidental effects on the speech (see, Schad v Borough of Mount Ephraim, 452 US 61; Young v American Mini Theatres, 427 US 50 [plurality opn]; id., at p 79 [Powell, J., concurring on basis of O’Brien]), and, most recently, in examining a city ordinance, enacted for aesthetic purposes, which prohibited the posting of signs on public property (Members of City Council v Taxpayers of Vincent, 466 US 789).
Courts in three other States have addressed the constitutionality of closure orders provided for in their statutory equivalents of title II, as applied to a premise used for protected expression. In two of these cases, the court determined that the appropriate test was that set forth in O’Brien (see, People ex rel. Van De Kamp v American Art Enters., 75 Cal App 3d, at p 531,142 Cal Rptr, at p 342, supra; Commonwealth v Croatan Books, 228 Va, at p_, 323 SE2d, at p 88, supra).[9] We agree with these decisions, and thus turn to an application of the four-part O’Brien test.
A statute aimed at the abatement of a public nuisance is certainly within the police power of the State (see, Lane v City of Mount Vernon, 38 NY2d 344; Lawton v Steele, 119 NY 226, affd 152 US 133). We also have no difficulty concluding that restriction of the conduct alleged in the complaint furthers an important governmental interest. Prostitution is criminal activity no matter where it occurs (Penal Law § 230.00), and the other sexual activity alleged is prohibited in public places (see, Penal Law § 245.00; cf. People v Adult World Bookstore, 108 Cal App 3d, at p 410, 166 Cal Rptr, at p 523, supra [“Not everyone who enters a dirty bookstore * * * expects to be molested, propositioned, or subjected to an open view of live homosexual acts of others.”]). Additionally, the interest in restricting this conduct is clearly unrelated to the suppression of free expression. Thus we find, as did the courts in Van De Kamp and Croatan Books, that the first three elements of the O’Brien test are satisfied.
*337 In Croatan Books, the court concluded that closure of the premises involved was necessary to abate the sexual conduct proscribed by its statutory provisions, and thus found that the fourth element of the O’Brien test was satisfied as well. The court in Van De Kamp, to the contrary, found closure to be overbroad and thus unconstitutional. In Croatan Books, the court specifically noted that, following an initial hearing, the trial court had ordered temporary injunctive relief designed to eliminate the nuisance without closing the premises, and that the evidence at a second hearing showed that this relief had been ineffective. The court was thus able to conclude that “less restrictive remedial measures failed to abate what the trial court had unequivocally found * * * to be a nuisance” (228 Va, at p_, 323 SE2d, at p 90). In the present case, there has been no “less restrictive” relief imposed, nor has the District Attorney demonstrated that the injunctive relief provided for in title II would be insufficient to abate the nuisance. If the District Attorney succeeds at trial, he will be entitled to a permanent injunction against the existence or maintenance of a nuisance in violation of section 2320 and the injunction will be binding upon defendant. A violation of any of the provisions of the injunction would be a contempt, punishment for which could include imprisonment (see, §§ 2327, 2328).
Under these circumstances, we conclude that closure of defendant’s bookstore is not essential to the furtherance of the purposes underlying title II, and is thus an unconstitutional restraint on defendant’s First Amendment rights. While closure might be the most efficient remedy, “considerations of this sort do not empower a [State] to abridge freedom of speech” (Schneider v State, 308 US 147, 164).
Both certified questions are answered in the affirmative. The order of the Appellate Division is modified to grant defendant partial summary judgment dismissing those portions of the second cause of action seeking an order directing the closing of the premises in question.

. While the owner of the premises, Charles Ottaviano, is also a named defendant in this action, this appeal concerns only the activities of Cloud Books, and any use of “defendant” refers to it.

. The complaint also sought a preliminary injunction, but this relief was denied by the trial court and that order was affirmed by the Appellate Division.

. In a concurring opinion, Justice Green expressed the view, urged by the partial dissent here, that the constitutional issue was premature, as defendant might prevail at trial and thus never be subjected to an order of abatement. Plaintiff, however, is not merely seeking to obtain a ruling on the constitutionality of an event which “is beyond the control of the parties and may never occur” (New York Public Interest Research Group v Carey, 42 NY2d 527, 531), as the District Attorney is actually seeking to obtain the very result which defendant asserts would be unconstitutional. Furthermore, where a challenged action would restrict a party’s First Amendment freedoms or might deter the exercise of such rights by others, an actual controversy may exist even though the party has yet to be subjected to any restriction of First Amendment freedoms (see, e.g., Secretary of State of Md. v Munson Co., 467 US _, 104 S Ct 2839; Younger v Harris, 401 US 37, 41; Thompson v Wallin, 301 NY 476, affd sub nom. Adler v Board of Educ., 342 US 485). Thus, we agree with the majority at the Appellate Division that a defendant in a civil action may move for summary judgment on a cause of action on the ground that the relief sought would be unconstitutional, at least where, as here, there are First Amendment interests asserted. Our adjudication of the First Amendment issue seems particularly appropriate under the circumstances of this case, as the unconstitutional restraint would have already occurred and the issue would likely be moot by the time of any posttrial review by us.

. We will interpret the first question as asking more specifically whether title II may be applicable based on the allegations in this complaint, and thus the question raises an issue of law decisive of the appeal. (See, Cohen and Karger, Powers of the New York Court of Appeals § 87 [rev ed].) Furthermore, even though questions of fact remain to be determined at trial, the second question is properly before us because it is undisputed that defendant’s store is, *329 in fact, a “bookstore” selling materials protected by the First Amendment. The District Attorney’s complaint refers to defendant’s business as including the sale of books, magazines and periodicals, alleges that literature of “an explicitly sexual nature” is sold at the store, and stresses in its brief to this court, as well as in an affidavit submitted to Special Term in opposition to defendant’s motion for partial summary judgment, that this action has been brought “not because the premises is a bookstore, but in spite of that fact.” Additionally, the lower courts have characterized the store as a “bookstore”. Thus, an affirmative answer to this question would mandate a modification of the Appellate Division order regardless of what conduct taking place within the bookstore is later proved at trial (cf. Patrician Plastic Corp. v Bernadel Realty Corp., 25 NY2d 599).

. We further note that the titles for the statutes as a whole and the individual sections were not enacted in 1927 but were instead added in 1939 when article 17-a was changed to article 17 (see, L1939, ch 210), which adds to our reluctance to place any emphasis on them.

. The provisions of section 2332 concerning relief from a closure order do not negate defendant’s argument, as that section provides only that the court may cancel the order upon certain conditions being met. Additionally, these conditions require that the owner of the premises take certain steps, including the posting of a bond, thus making relief for a lessee, such as defendant, dependent upon the discretion and financial status of the owner (see, Note, Pornography, Padlocks and Prior Restraints: The Constitutional Limits of the Nuisance Power, 58 NYU L Rev 1478,1507 [hereafter cited as “Padlocks and Prior Restraints”]).

. The other case cited by the District Attorney is State ex rel. Kidwell v U.S. Mktg. (102 Idaho 451, 631 P2d 622, probable jurisdiction noted 454 US 1140, appeal dis. ússed on motion of appellant 455 US 1009), in which the Idaho Supreme Court upheld the closure, stating that it was not a prior restraint, but was instead merely an in rem punishment imposed on the property, analogous to a civil forfeiture of property used in a crime.

. That defendant would still be free to use any other premises to sell books is of little relevance, in part because the availability and practicality of an alternate site will always be speculative (see, Note, Padlocks and Prior Restraints, supra, n 6, at 1506), but more fundamentally because “ ‘[o]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place’ ” (Southeastern Promotions v Conrad, supra, 420 US, at p 556; Schneider v State, 308 US 147, 163).

. In the third case, Commonwealth ex rel. Lewis v Allouwill Realty Corp. (330 Pa Super Ct 32, 478 A2d 1334), the court recognized that closure might have an incidental effect on the dissemination of protected materials, but summarily rejected a First Amendment argument, noting only that it was “conceivable” that the bookstore operator could continue to sell his books elsewhere (330 Pa Super Ct, at p_, 478 A2d, at pp 1338-1339).